**Robert HARRIS, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–780A210.**

Court of Appeals of Indiana,
Third District.

Feb. 26, 1981.

Patricia L. Engels, Lake Village, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

STATON, Judge.

Robert Harris was charged and convicted by jury of the crimes of Burglary[1] and Theft.[2] He was sentenced to the Indiana Department of Correction for a period of ten years. On appeal, Harris raises three issues for our consideration:

(1) Did the court err in not allowing the court-appointed attorney to withdraw so that Harris could hire private counsel?

(2) Is there sufficient evidence to support the verdict of the jury?

(3) Did the court err in denying his motion for directed verdict on both counts at the close of the State's case-in-chief?

We affirm.

### I.

#### Adequate Counsel

Harris first argues that the court erred in not allowing him "to hire an attorney of his own choosing." Suggesting that animosity existed between himself and his court-appointed attorney, Harris claims that he "was deprived of his right to representation by counsel in substance, if not in fact." We disagree.

An attorney is presumed to render competent representation and only a strong showing to the contrary will rebut this presumption. *Lloyd v. State* (1979), Ind., 383 N.E.2d 1048; *Robertson v. State* (1974), 262 Ind. 562, 319 N.E.2d 833. We will presume that counsel has prepared and executed his client's defense effectively, *Hollon v. State* (1980), Ind., 398 N.E.2d 1273, and will not second-guess matters of judgment and strategy unless it appears from the record that the trial was reduced to a mockery of justice. *Hollon, supra; Lloyd, supra.*

---

1. *See* IC 1971, 35–43–2–1.

2. *See* IC 1971, 35–43–4–2.

The record indicates that on January 3, 1980, pauper counsel was appointed by the court, pursuant to Harris's request. Harris's counsel, among other things: represented him at the probable cause hearing; filed a Notice of Intent to Assert Alibi Defense; filed a Notice to Take Deposition; moved for a separation of witnesses prior to trial; and, argued a motion in limine. The trial began on February 7, 1980. After several preliminary motions had been made, Harris requested the withdrawal of his court-appointed attorney and asked that he be allowed to retain private counsel. Harris was asked by the court why he was dissatisfied with his representation. After explaining that he questioned some of his attorney's trial strategy, Harris stated that "I don't feel comfortable with him."

In addition to making his request at a most inopportune time, Harris has failed to demonstrate how he was prejudiced by anything his attorney did or failed to do. We conclude that the court did not err in denying his untimely request as it is not error to refuse a defendant's request to replace his counsel during or immediately before trial. *Wombles v. State* (1979), Ind., 383 N.E.2d 1037.

## II.

### Sufficiency of Evidence

Claiming that there is insufficient evidence to support the jury's verdict, Harris argues that the State failed to establish that he knowingly or intentionally exerted unauthorized control over property of another with the intent to deprive that person of its use. IC 1971, 35–43–4–2. He also contends that there was insufficient evidence to show that he broke and entered a dwelling with the intent to commit a felony. IC 1971, 35–43–2–1.

In considering the question of sufficiency of the evidence on appeal, this Court may consider only that evidence most favorable to the State, together with all the logical and reasonable inferences to be drawn therefrom. If there is sufficient evidence of probative value supporting the jury's verdict, it will not be set aside. *Willard v. State* (1980), Ind., 400 N.E.2d 151; *Jones v. State* (1978), 268 Ind. 640, 377 N.E.2d 1349. In reviewing such a claim, we will neither weigh the evidence nor determine the credibility of the witnesses. *Willard, supra.*

A review of the record indicates that, after a pre-Christmas early evening visit with relatives, the Wisemans returned to their farm to find their house lights on and a large white automobile with Illinois plates sitting in their driveway.[3] As he turned into his driveway, Wiseman tried to block the white car with his automobile. He only succeeded in striking the driver's side of the white car as it cut across his yard to reach the road which led to the Illinois state line—some three and one-half miles away. Mrs. Wiseman took the farm truck from the shed and went to a nearby house to call the police.[4] Upon entering his house, Wiseman discovered that the back doors had been left open, that their color television set had been taken and that many of their Christmas presents had been scattered in the backyard.

A radio dispatch of the car's description was received by a patrolling deputy sheriff who spotted the white car within the area of the Wiseman farm. He gave chase to the car—often at speeds in excess of 100 mph—and followed it to the state line where he radioed the Illinois authorities for help. The car was spotted in Illinois shortly thereafter and chased by Illinois deputies—again at speeds in excess of 100 mph—back into Indiana. The car was finally stopped after one of the deputies shot out the vehicle's tires with a shotgun. The Wisemans' television set was found in the car's trunk. Harris, who was being accompanied by a

---

3. Mr. Wiseman testified that as he pulled into the driveway, he thought he "saw a shadow go by the bathroom window."

4. When Mrs. Wiseman left to call the police, she noticed that the white car was still within sight even though several minutes had passed since the family had arrived home. She explained, "Ah ... it wasn't quite down to the neighbor's yet, you know. And I thought it was strange. That's about a quarter of a mile."

female companion, was arrested at the scene of the stop and identified as the driver of the car.

At trial, paint samples, which had been taken from the dented driver's side of the white car, were identified by a chemical analysis as being the same as the paint chips found in the Wiseman driveway. The television set, taken from the trunk of the white car, was identified by sight and by serial number as the property of the Wiseman family.

■ A conviction may be sustained upon circumstantial evidence alone. *Willard, supra; Ruetz v. State* (1978), 268 Ind. 42, 373 N.E.2d 152, 156–157. When we review a conviction based upon circumstantial evidence, we do not have to examine the evidence to determine whether it is adequate to overcome every reasonable hypothesis of innocence. Rather, we will look to see if an inference, which supports the verdict of the jury, may be reasonably drawn therefrom. *Jones, supra; Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, 1080.

■ We note that Wiseman was unable to make a positive identification of Harris as the driver of the white car and that the footprint found in the Wiseman's backyard did not match the shoe Harris was wearing.[5] Nonetheless, we are persuaded that there is sufficient evidence to support the guilty verdict as to both counts. Harris's persistent high-speed flights, accompanied by the possession of the stolen property and the chemical analysis evidence, is sufficient to reasonably support an inference that he had knowingly obtained and exerted unauthorized control of the television. *See Monroe v. State* (1975), 167 Ind.

App. 418, 339 N.E.2d 102. To prove the "breaking and entering" elements of burglary, the prosecution does not have to show that an actual breaking of the entry occurred. "Breaking and entering," as used herein, connotes an illegal entry, one which can be accomplished by even the opening of an unlocked door or window. *Willard, supra.* Wiseman testified that, upon his return, he found the back doors of his home standing wide open[6] and his Christmas presents scattered about the yard. We conclude that this is sufficient to support the inference that Harris or an accomplice forced the entry. *See Christian v. State* (1975), 163 Ind.App. 237, 323 N.E.2d 253.

### III.

### Directed Verdict

■ Finally, Harris claims that the court erred in denying his motions for a directed verdict at the close of the State's case-in-chief. His contention is without merit. Where there is sufficient evidence to support a guilty verdict in a criminal proceeding, an earlier ruling of the court denying a motion for directed verdict is proper. *Faught v. State* (1979), Ind., 390 N.E.2d 1011. Additionally, we note that a defendant waives any alleged error in the court's denial of his motion for directed verdict if he presents evidence on his behalf. *Dodson v. State* (1978), 269 Ind. 380, 381 N.E.2d 90. Harris put on two defense witnesses.

Finding no error, we affirm the judgment of the trial court.

Judgment affirmed.

HOFFMAN, P. J., and GARRARD, J., concur.

---

5. Mrs. Wiseman testified as to this footprint:
"Q. What could you tell us about that footprint?
"A. Ah, it was a rounded shoe.
       *    *    *    *    *    *
"Q. Did you ever, after you observed this footprint, see anyone wearing a shoe that you thought may resemble this footprint?
"A. Yes.
"Q. Where was that?
"A. When we went down to identify the television set.
"Q. And where was that then?

"A. At the Sheriff's office.
"Q. And who was wearing this particular shoe?
"A. Ah, the lady that was picked up with Mr. Harris. 'Cause I remember telling the Sheriff that it couldn't have been his shoe in the flower bed because he had a pointed shoe on and her's was definitely rounded."

6. Mr. Wiseman testified that before leaving their home, "We closed all the doors, which we always do." The back doors were not locked.