**Donald Lee VACENDAK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1080S386.**

Supreme Court of Indiana.

Feb. 16, 1982.

Arlington J. Foley, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Vacendak was found guilty by a jury of the crime of Class B Burglary and sentenced to a term of fifteen (15) years on May 5, 1980. He raises issues for our review concerning the denial of motions, the admission of evidence, the appearance of an accomplice witness, the denial of bail and sentencing.

The evidence showed that the Hammond police were alerted to a possible burglary in progress at Val's Pharmacy at 6520 Calumet Avenue, Hammond, Lake County, Indiana, at the hour of 1:00 a. m., on August 11, 1979. When police arrived they found that four concrete blocks had been broken out of the rear of the building creating a hole into the interior of the building. A sledge hammer and pick were found near the hole. Several police units came to the scene. Sergeant Bruce Perisho looked in the window of the Pharmacy and saw the appellant, Donald Lee Vacendak, and another individual walking around the aisles inside the store. He saw the butt of a revolver in the waistband of Vacendak's trousers. Perisho saw the revolver fall out of Vacendak's trousers onto the floor as he scrambled away. This officer knew Vacendak and recognized him. Perisho later observed Lt. Miskus pick up a gun lying on the floor

inside the Pharmacy.. Lt. Miskus turned the gun over to Sgt. Perisho. Officer Lyn West, Jr., was assigned to the canine unit of the Hammond police. He and a fellow officer took patrol dogs into Val's Pharmacy and located two male subjects lying in the crawl space between the ceiling and the roof of the building. One of the subjects was appellant Vacendak and the other was Matthew Spicker, a juvenile, 16 years of age. A large box of drugs and syringes was found sitting out in the aisle of the store.

Appellant testified in his own behalf and stated that he, Spicker, and one Stephen Dembowski, committed the burglary in order to obtain drugs. Defendant claimed he had an addiction or strong psychological dependence upon drugs and that he had consumed alcohol and drugs prior to the burglary that day. He further testified that the gun belonged to Matt Spicker and that Spicker was the one who had possession of it. He further testified that he did not know that Matt Spicker had the gun until just prior to the break-in.

### I.

Appellant claims it was error for the court to overrule his motion for judgment on the evidence at the end of the State's case in chief and his Motion at the conclusion of all of the evidence because of the failure of the State to prove that the Pharmacy in this case was "of another person, that the entry was unauthorized and that the weapon used was deadly or that defendant possessed it."

■ Appellant waived any alleged error in the denial of his motion for judgment on the evidence at the close of the State's case when, after such denial, he presented evidence on his own behalf. *Dodson v. State*, (1978) 269 Ind. 380, 381 N.E.2d 90; *Downs v. State*, (1977) 267 Ind. 342, 369 N.E.2d 1079, 1081. In addition, here there was also sufficient evidence for the court to properly deny said motion. The test of sufficiency at this point is whether there is substantial evidence of probative value for the jury to determine guilt beyond a reasonable doubt.

*Faught v. State*, (1979) Ind., 390 N.E.2d 1011; *Harris v. State*, (1981) Ind.App., 416 N.E.2d 902, 905. We have repeatedly held that in reviewing sufficiency arguments we consider only that evidence which is most favorable to the State together with all the reasonable and logical inferences to be drawn from the evidence. We do not reweigh the evidence or determine credibility of witnesses. *McCollum v. State*, (1980) Ind., 413 N.E.2d 912, 913; *Charlton v. State*, (1980) Ind., 408 N.E.2d 1248, 1249.

Appellant based his motion, at least in part, on the fact that Val Grimberg, the owner of the Pharmacy, did not appear as a witness. However, Val Grimberg's brother, George Grimberg, did appear, and testified that Val Grimberg was the owner of the burglarized premises. In addition to the inferences that could be drawn from the facts presented demonstrating the method of entry into the premises, both Matthew Spicker and appellant testified that they entered the premises for the purpose of obtaining items of drugs and further testified that they had no authority or permission from Val Grimberg to enter upon the premises.

■ There was evidence that the appellant and Spicker went to appellant's home and obtained a hammer, a pick, and a gun, with the express purpose of using these items in the burglary. The gun was a .44 calibre Smith and Wesson revolver. Matthew Spicker testified that the afternoon before the robbery he and Appellant had practiced using the pistol and had shot it at least one hundred times on the shores of Lake Michigan. Officer Perisho testified that he saw the weapon on Vacendak's person when he first spotted appellant inside the store and that the weapon fell to where the police retrieved it in Perisho's presence. Furthermore, even if Spicker were the one who had possession of the pistol at the time of entry, the evidence would be sufficient to show Appellant committed Class B Burglary. When confederates combine to commit an offense, each is responsible for the acts committed in furtherance of their common design. *Hogan v. State*, (1980) Ind., 409

N.E.2d 588, 590; *Barnes v. State*, (1978) 269 Ind. 76, 378 N.E.2d 839.

Ind.Code § 35–41–1–2 (Burns 1979) defines the term "deadly weapon" used in Ind.Code § 35–43–2–1 (Burns 1979) as "(1) a loaded or unloaded firearm...." Officer Perisho testified that the revolver was loaded with six live rounds when he took possession of it in the store and Spicker testified it was in firing condition.

There was sufficient evidence presented to the jury for it to find beyond a reasonable doubt that the defendant committed the crime of Burglary Class B as charged and the trial court properly overruled motions for judgment on the evidence at the close of the State's case in chief and at the close of all the evidence.

## II.

Several items of evidence were offered by the State and objected to by Appellant. These items included a photograph of the rear wall of Val's Pharmacy, showing a hole broken in the wall, the gun found by police on the premises, a pick and sledge hammer, shells taken from the gun and one shell taken from the person of Appellant. Appellant's objections to these items of evidence was based on the fact that they were presented before the *corpus delicti* had been proved, or, in other words, before there was sufficient evidence to prove that the crime charged had actually been committed by someone. His objections were based in part on the arguments made in Issue I, *supra*, that there was a lack of proof of ownership of the invaded premises and lack of authority to enter it. In view of our finding on those issues, his argument fails here. Furthermore, Appellant misapplies the *corpus delicti* rule. At one time the preferred method of presenting evidence in Indiana was that the State was required to prove the *corpus delicti* before evidence could be admitted of the admission of extra-judicial confessions or admission of guilt by the defendant. *Cambron v. State*, (1975) 262 Ind. 660, 322 N.E.2d 712, 715. In *Collison v. State*, (1975) 165 Ind.App. 596, 333 N.E.2d 787, 789, the Court of Appeals stated:

"Generally the corpus delicti consists of independent evidence of each of the elements of the crime. *Cambron, supra.* The order of proof of the independent evidence is within the sound discretion of the trial judge and no abuse will occur where the nature of the case, the evidence, or convenience requires a deviation from the usual order. *Thomas v. State*, (1975), [262] Ind. [590], 321 N.E.2d 194; *Ballard* [*v. State*, 262 Ind. 482, 318 N.E.2d 798], *supra.*"

In 1978, this Court held in *McDaniel v. State*, 268 Ind. 380, 375 N.E.2d 228, that the State was not required to prove the *corpus delicti* by independent evidence prior to the introduction of a confession so long as the State, at some point, adduced the necessary proof to establish a *corpus delicti*. Order of evidence is a matter to be determined in the sound discretion of the trial judge. It will not be error if the State is permitted to present evidence that tends to show that the defendant is the perpetrator of the crime prior to all of the elements of the crime being proved, so long as such independent evidence is forthcoming at some point in the State's presentation. There was ample evidence presented in this case to prove the *corpus delicti*. The evidence showed that Val's Pharmacy in Hammond, Indiana, had been broken into by the destruction of four concrete blocks, creating a hole in the building, that property had been taken from the shelves and piled into a box in the aisle of the store, that shelves were in disarray in the pharmacy, that drugs had been removed, and that a lock was broken from an iron gate within the store. Furthermore, the perpetrators of the act were found in the premises, hiding from the police, and both admitted their involvement in the crime before the jury. There was no error committed in the overruling of objections to the items of evidence offered by the State.

## III.

On the morning of trial and immediately prior to the selection of the jury, Vacendak moved for a continuance and for

permission to discharge his counsel and to hire new counsel to represent him. His attorney joined in the motion, stating that there was some lack of communication between counsel and the defendant. The court denied both motions. The record showed that Vacendak's trial counsel had been privately retained by him six months before the trial date and the motion for delay. It further shows that the attorney participated in pretrial matters and filed various motions in that six months. Appellant does not allege or show any prejudice to him as a result of the court's ruling. His motion is based solely on his right to have counsel of his choice. The record shows that the attorney cross-examined State's witnesses and directly examined defense witnesses in a competent and informed manner. The same attorney has also handled all post-trial and appeal matters for this appellant. This Court has held that a trial court may refuse to allow a criminal defendant to replace his counsel during or immediately before trial. *German v. State*, (1978) Ind., 373 N.E.2d 880; *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811. Failure to grant an untimely request for change of counsel is not error absent a showing by Defendant that he was prejudiced by anything his attorney did or did not do. *Harris v. State*, (1981) Ind.App., 416 N.E.2d 902. There is no such showing here. The facts in each case determine whether a denial of request for continuance to obtain counsel is a violation of Article 6 of the Amendments to the Constitution. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921. A defendant may not frustrate or disrupt sound judicial administration by a deliberate process of discharging retained or assigned counsel. *The United States v. Hampton*, (7th Cir. 1972) 475 F.2d 299, *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101. There is no showing of error on this issue.

### IV.

On the 18th of February, 1981, Defendant-appellant filed his "Petition for Permission for Defendant to File Belated Motion for a New Trial" and his related "Motion for a New Trial." This should properly have been called a motion to correct errors and the court considered it as such. The trial court did allow the filing of the belated motion for a new trial and ultimately denied it. The issue raised in said motion, with which we are concerned here, was the overruling of defendant's motion for a continuance six days before trial so that he might locate one Steve Dembowski and Matthew Spicker as witnesses to testify as to the entrapment of the defendant by the Hammond Police. The record shows that at the time the trial court heard the motion for a continuance prior to trial, Matthew Spicker was available as a witness and, in fact, was under subpoena by the defendant. He was called by the State, testified for the State, and was cross-examined by the defendant. At no time was Matthew Spicker asked any questions concerning entrapment of the defendant by the Hammond Police Department, or concerning Matthew Spicker or Stephen Dembowski being agents of the Hammond Police Force. No evidence was ever presented, nor was any allegation made during the trial that the defendant was entrapped by the Hammond Police. In his belated motion to correct errors, the defendant offered no evidence nor submitted any affidavits or testimony that Steven Dembowski was a police agent or otherwise in a position to entrap Defendant. There was some testimony at the post-trial hearing that Dembowski was incarcerated in the Lake County Jail at the time of the trial. There was no evidence that any of the parties, or the court were aware of the fact that Dembowski was in the jail at that time. Spicker testified that only he and the defendant committed the crime. The only testimony offered that Steve Dembowski was involved in the crime at all was defendant's statement that such was the case. Two continuances were granted defendant on the post-trial motion to correct errors to allow him to bring forth evidence to support his claims. The court granted the defendant a continuance from March 5, 1981, to April 3, 1981, to present any evidence to support his motion for a new trial based on

the entrapment allegation. That hearing was further advanced to March 12, 1981, at Defendant's request. On March 12, the defense phoned the trial court to inform it that there would be no evidence to present on the issue so the judge denied the motion.

 The issue of entrapment is raised by a showing of police involvement in inducing the defendant to commit the crime he was not predisposed to commit. *Williams v. State*, (1980) Ind., 409 N.E.2d 571. *Hardin v. State*, (1976) 265 Ind. 635, 358 N.E.2d 134. Since the defendant failed to show in any manner that there were any facts tending to support his bald assertion that there was an entrapment, the trial court properly denied his motion to correct errors. *Emerson v. State*, (1972) 259 Ind. 399, 387 N.E.2d 867. Ind.R.Tr.P. 59(H).

### V.

Appellant has raised two issues regarding sentencing. Appellant was convicted of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979). He was sentenced pursuant to Ind.Code § 35–50–2–5 (Burns 1979), which authorizes a sentence from six to twenty years. The trial judge sentenced defendant to fifteen (15) years. Our rules provide that sentences will not be revised on review unless manifestly unreasonable in light of the nature of the offense and character of the offender. Ind.R.App.Rev.Sen. 2(2) states: "A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

 Appellant does not assert that the sentence is manifestly unreasonable. His argument is that the trial court must have ignored some mitigating circumstances. These circumstances are generally his statements that the crime did not cause or threaten serious harm to any person or property, and that he did not contemplate that it would and that the crime was a result of circumstances which were not likely to recur. He stated that there were grounds tending to excuse or justify the crime, and that his imprisonment would re-

sult in undue hardship to himself or his dependents. These factors are, of course, appellant's interpretation of the evidence. The evidence did show that a corner of the burglarized property was destroyed and that a loaded .44 Magnum weapon was used in the perpetration. Appellant and other witnesses testified that he had been involved in a great deal of criminal activity, of which one incident resulted in a felony conviction. The court commented on this evidence and also commented on the fact that Vacendak was aware of his ailing mother's condition when he committed this crime. It does not appear that the court ignored these mitigating circumstances, if, in fact, they were mitigating circumstances as defined in the statute. Appellant had a history of criminal activity and made an admission during sentencing as to more than one instance of escape from penal institutions as a juvenile and as an adult. He admitted violations of alcoholic beverage, drug and firearms laws. He involved a juvenile in this crime. As one of the grounds of his motion to correct errors, Vacendak attempted to persuade the court to reduce his sentence. The court declined to do so. We will not alter a sentence set by the trial judge if it is within statutory bounds unless it appears it is manifestly unreasonable. *See: Hauger v. State*, (1980) Ind., 405 N.E.2d 526; *Williams v. State*, (1979) Ind., 395 N.E.2d 239; *McNew v. State*, (1979) Ind., 391 N.E.2d 607. There is no showing that the fifteen year sentence here was manifestly unreasonable and we, therefore, will not interfere with the judgment of the trial judge.

### VI.

 Sergeant Bruce Perisho of the Hammond Police Department testified that he looked into the window of Val's Pharmacy and observed the defendant and another person inside of the store. He was asked whether he had ever seen the defendant before and testified: "Twice while I was a Patrol Sergeant." The defendant then untimely objected to the question and answer, and moved for a mistrial, which motion was

overruled. It is the contention of the defendant that the answer had no tendency to establish guilt or innocence and therefore could serve only to prejudice him.

The context of the question here shows that it was asked for the purpose of establishing the witness' ability to identify the defendant, and thus served a legitimate purpose of indicating to the jury the basis of the officer's identification. There was no further testimony requested or given by the officer on the circumstances of his prior observations of this defendant. Though it can be said there is an inference that the prior contacts involved criminal activity, the relevance of the testimony outweighed the prejudicial effect incident to the simple statement that he had seen him before on two occasions. Particularly in view of the fact that Vacendak was found inside the premises and testified himself as to his involvement in the perpetration of this crime, it cannot be said that any prejudice to him by this testimony would justify the granting of a new trial.

## VII.

■■■ Appellant contends the trial judge erred in denying him an appeal bond without a hearing. Armed burglary is a non-suspendable felony pursuant to Ind. Code § 35–50–2–2 (Burns 1979). There is no constitutional right to be let to bail pending appeal. *Keys v. State*, (1979) Ind., 390 N.E.2d 148. This Court has repeatedly held that the legislature has the right to provide that a person will not be let to bail for nonsuspendable offenses as it did in § 35–4–6–1.5, (Burns Supp.1979) and which statute was in effect at the time of sentencing of this defendant. *State ex rel. Scott v. St. Joseph Superior Court*, (1980) Ind., 413 N.E.2d 565; *State ex rel. Dorton v. Circuit Court of Elkhart County*, (1980) Ind., 412 N.E.2d 72. The trial judge did, in this case, grant the defendant a hearing on his motion to be let to bail pending appeal and denied said motion. He committed no reversible error when he did so.

## VIII.

Accomplice Matthew Spiker appeared as a witness. He was dressed in prison clothes and testified that he then resided at the Boys School. When Spiker was called defendant objected but on other grounds. These objections were discussed. At no time did defendant object on the basis of Spiker's clothes. After this discussion the State repeated its question as to where Spiker resided. After Spiker answered, the defendant moved for a mistrial based on the testimony regarding his residence and the prison garb. This motion was denied. Later, when asked where he got the gun, Spiker said, "I stoled it." Again defendant moved for a mistrial on the basis of alleged prejudice. This motion was overruled.

■■■ This issue has been waived by appellant's failure to raise a timely objection to the dress or to the question of residence. *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116. Appellant has also failed to support his claim by any authority. *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411.

## IX.

Vacendak testified in his own behalf and admitted committing this burglary with Matthew Spiker. He stated the purpose of their going into the drugstore was to obtain drugs and described himself as having been psychologically dependent on drugs. It was apparent he was giving this testimony as an excuse for having committed the crime. In describing himself he used the term "heavily addicted to strong narcotics" and said he had been smoking "joints," drinking beer, and consuming Valiums, Placidyls, and another "real strong" drug before conceiving of or entering into the plan to burglarize Val's Pharmacy. On both direct and cross-examination, Appellant injected the subject of his drug use into the proceedings. In response to a question he would state that he took some more drugs and was feeling their effects or that he smoked more marijuana and that he was dazed. During cross-examination he was asked what he did next and he stated he was "Hooked on the needle from shooting Demerol, Dilaudid,

and Percodan, and other narcotics." Then the following dialogue took place between the prosecuting attorney and the defendant:

Q. How long have you been hooked on that?

A. Not really hooked about I don't know, I have been taking Dilaudid six months.

Q. You said you were hooked on needles, where were you shooting?

A. Where?

Q. Where do you shoot?

A. Where do you usually shoot dope, in your arms.

Q. I don't know, you tell me?

A. Right here, in your arms.

Q. When was the last time you shot?

BY MR. FOLEY:

I will object, getting beyond the point of relevancy.

A. I—

BY MR. OLSZEWSKI:

I believe it is totally relevant.

BY THE COURT:

Objection overruled.

Record at 352–53.

█ It is now appellant's contention that the trial judge improperly allowed the prosecutor's questions to stand and required the defendant to answer, claiming the only purpose of the questions was to prejudice this defendant by showing his involvement in criminal or improper conduct. This contention is without merit. The defendant himself raised the issue of his involvement in drugs. The prosecuting attorney therefore had a right to cross-examine him on this same subject.

Finding no reversible error, we affirm the trial court.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.