**Duane Keith STEWART, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 182S34.**

Supreme Court of Indiana.

Dec. 14, 1982.

Merle B. Rose, Cronin & Rose, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged by way of a two-count indictment. Count I was for felony murder, and Count II was for attempted robbery. He was tried before a jury and found guilty on both counts. He was sentenced to sixty (60) years on Count I and thirty (30) years on Count II, both terms to be served consecutively.

On the evening of July 21, 1979, a party attended by several young people was in progress at 5020 Fall Creek Parkway in Indianapolis. The decedent, one Christopher A. Becker, was one of those in attendance. He was returning from a trip to a liquor store along with some friends when appellant and two companions, one Charles Dearman and appellant's brother Jeffery

decided to rob him. Appellant and his companions had a .22 caliber pistol and a .22 caliber rifle in the car with them.

Dearman got out of the car armed with the pistol while appellant took the rifle. They approached the decedent who was still sitting in his truck. They demanded money from him. He belligerently refused their demand, and the pair began to walk back to their car. The decedent got out of his truck and began following them, yelling at them. Dearman, who testified as part of a plea bargain agreement, said that as he was walking back to the car he heard two or three shots. He testified he turned and saw the decedent clutching his stomach and appellant holding the rifle pointed at the decedent. Medical testimony established a gunshot wound to the left side of the chest was the cause of death. Jeffery Stewart also testified that upon their return to the car, his brother stated he had shot the decedent.

Appellant claims the verdict was unsupported by sufficient evidence and was contrary to law. He argues the testimony of Charles Dearman demonstrates he made conflicting statements and told several falsehoods in making pre-trial statements. Because of these deficiencies in Dearman's testimony appellant argues the evidence is insufficient for the jury to have concluded it was he and not Dearman who fired the fatal shot.

■ We do not reweigh the evidence nor judge the credibility of witnesses. *Williams v. State,* (1980) Ind., 406 N.E.2d 241.

■ In the case at bar the inescapable fact is witness Dearman affirmatively stated that as he and appellant were returning to their car and the decedent was yelling at them he heard shots and turned around to see the decedent clutching his stomach and appellant pointing the rifle at him. It was certainly reasonable to infer from that and other evidence it was appellant who fired the shots and murdered the decedent. The uncorroborated testimony of an accomplice is sufficient to support a conviction. *Walker v. State,* (1980) Ind., 409 N.E.2d 626. We hold there is sufficient evidence to support the conviction.

Appellant claims the trial court erred in denying his *pro se* motion to dismiss his retained attorney, made immediately prior to *voir dire* of the jury. At that time appellant made known to the trial judge his dissatisfaction with the attorney because he failed to subpoena a certain witness. The attorney admitted being informed of the witness' name and telephone number. However, he stated, and appellant confirmed, he was not provided with the witness' address. Appellant also claimed the attorney withheld information on discovery processes from him. Finally, appellant expressed general dissatisfaction with the attorney because he "wasn't very interested" in his case.

On appeal appellant treats this issue as one relating to the Sixth Amendment right to the effective assistance of counsel. He argues the attorney's failure to subpoena the witness and failure to inform him of the progress of the case generally constitute ineffective representation as measured by the standards elucidated in *Duncan v. State,* (1980) Ind., 412 N.E.2d 770 and *Harris v. State,* (1981) Ind.App., 416 N.E.2d 902.

■ We have held failure to grant an untimely request to change counsel is not error absent a showing the defendant was prejudiced by anything the attorney did or did not do. *Vacendak v. State,* (1982) Ind., 431 N.E.2d 100. Moreover, the defendant may not disrupt the sound administration of the criminal justice system by deliberate discharge of counsel. *Vacendak, supra; Duncan, supra.*

Appellant was not prejudiced in this case by the failure to allow him to discharge the attorney. The record shows the attorney filed a number of pre-trial motions in appellant's behalf. We also find the attorney cross-examined the State's witnesses effectively, and particularly that he conducted what can be characterized as a scathing cross-examination of Charles Dearman. Finally, during preliminary questioning of appellant when he took the stand in his own defense he admitted after talking to the attorney he agreed he "felt a little better

about things" and agreed the testimony of the missing witness would not have been very helpful to him. He also admitted he knew his attorney made an effort to find this witness prior to trial.

■ The record thus belies any notion the attorney was unprepared for trial or that appellant's trial was a "mockery of justice" due to the attorney's ineffectiveness. Appellant was not prejudiced by the denial of his motion to replace his attorney. *See, Vacendak, supra.*

In a related claim appellant argues the trial court erred in overruling his attorney's repeated motions to withdraw from the case. These motions were made during *voir dire* of the jury after appellant had made known to the court his dissatisfaction with the attorney.

■ The principles we identified above with regard to appellant's own motions to have the attorney discharged apply to the allegation the trial court erred in not permitting the attorney to withdraw from the case on his own motion. *See, Vacendak, supra.* The record belies any notion the failure to grant the motion in any way prejudiced appellant. There was not error in denying the attorney's motion to withdraw from the case.

Appellant claims the trial court erred in denying his trial attorney's motion to withdraw from the case made at the sentencing hearing. At that time the attorney stated he felt because of appellant's earlier indications of his dissatisfaction with his representation, it would be advisable to have a different attorney draft and file the motion to correct errors in the case. The trial court denied the attorney's motion to withdraw and required him to file the motion to correct error. However, the trial judge indicated she would permit the appointed appellate counsel to file a belated motion to correct error and therein raise any error appellant felt should have been raised and was not by the trial attorney.

The record reflects the trial attorney filed a Belated Motion to Correct Error on November 10, 1981, which was overruled

the same day. In that motion the trial attorney alleged error with regard to all of the above issues.

■ Appellant was in no way prejudiced by the trial court's ruling. The trial attorney properly preserved all possible allegations of error with regard to his representation of appellant in the face of the desire appellant manifested at one point in the proceeding to have a different attorney represent him. Only when the error has caused prejudice to the defendant is there cause to reverse the conviction. *Smith v. State*, (1982) Ind., 432 N.E.2d 1363; *Phillips v. State*, (1967) 248 Ind. 150, 222 N.E.2d 821. There being no prejudice shown here, there was no reversible error in requiring the trial attorney to file the motion to correct error.

Appellant claims the trial court erred in allowing witness Tom Williams to testify. Williams was in the back of decedent's truck when the events in question occurred. He had accompanied decedent on his trip to the liquor store made immediately prior to his being accosted by appellant and Charles Dearman. The record reflects the jury was excused from the courtroom when Williams began to testify and a hearing was held on his competency as a witness. During the hearing Williams admitted he had been drinking malt liquor or beer since 8:00 p.m. that evening. He admitted he was intoxicated when the events in question took place and about which he testified.

Appellant argues the trial court abused its discretion in determining Williams to be a competent witness.

■ We disagree. In *Ware v. State*, (1978) 268 Ind. 563, 565, 376 N.E.2d 1150, 1151, we stated: "The test of competency is whether the witness has sufficient mental capacity to perceive, to remember and to narrate the incident he has observed and to understand the nature and obligation of an oath." We also see upon examining a number of general authorities the fact a witness was intoxicated at the time the events occurred about which he testifies relates not at all to his competency but rather to his

credibility as a witness. *See generally,* 97 C.J.S. *Witnesses* § 59 (1957); 3 S. Gard, *Jones on Evidence* § 20:14 (6th ed. 1972); 2 C. Torcia, *Wharton's Criminal Evidence* § 375 (13th ed. 1972); *see also, Ware, supra; Kimble v. State,* (1974) 262 Ind. 522, 319 N.E.2d 140. Moreover, the determination of the competency of a witness is a matter committed to the sound discretion of the trial court. A determination of the competency of a witness is reviewable only when a manifest abuse of the discretion of the trial court has occurred. *Ware, supra; Grecco v. State,* (1960) 240 Ind. 584, 166 N.E.2d 180.

■ The record reflects though the witness admitted his intoxication he also stated he was "definitely" able to relate what words were exchanged between the decedent and appellant and his companion. He also testified he "sobered up" upon hearing the shots and was coherent enough to get out of the truck after he was sure the assailants were gone and to go to the house to call the police. In light of this testimony we see no manifest abuse of discretion in allowing Williams to testify.

Appellant claims the trial court erred in admitting into evidence Williams' testimony after it was shown he was hypnotized by a police officer after the crime occurred and an investigation was begun to try to improve his recollection of the event. He testified he made a statement to police after the hypnosis session. He finally testified, however, he remembered nothing more about the crime after the hypnosis session than he did before he was hypnotized.

Appellant cites the recently decided case of *Strong v. State,* (1982) Ind., 435 N.E.2d 969, in which we held a composite drawing of a suspect of a crime was inadmissible because the drawing was made while the witness was under hypnosis. We said:

"[T]he better reasoned cases hold that evidence derived from a witness while he is in a hypnotic trance is inherently unreliable and should, therefore be excluded as having no probative value. (Cites omitted.) Assuming, *arguendo,* that hypnosis can effect recall not otherwise ob-

tainable, the product is not susceptible of cross examination and should be excluded for this reason alone. The record shows that the composite drawing was such a product. It was, therefore, error to admit it into evidence." *Id.,* 435 N.E.2d at 970.

■ First, appellant has waived any allegation of error with regard to this issue because he failed to include any allegation of error on these grounds in his Belated Motion to Correct Error. *Hooks v. State,* (1980) Ind., 409 N.E.2d 618; *Lynn v. State,* (1978) 268 Ind. 632, 377 N.E.2d 1357.

■ Moreover, appellant overlooks the fact that the testimony we held inadmissible in *Strong* went to the identification of the defendant as the perpetrator of the crime. He also frames his objection in the case at bar in terms of the witness being incompetent to testify at all due to prior hypnosis. Both of these distinctions are relevant in the instant case. The fact a witness was once hypnotized does not render him incompetent to testify about the *corpus delicti* of the crime when he has already provided such information before the hypnosis session was conducted. *Forrester v. State,* (1982) Ind., 440 N.E.2d 475. In the case at bar witness Williams offered no testimony that served to identify appellant as the perpetrator of the offense. He testified only as to the factual events surrounding the shooting, insofar as he was able to perceive them through his sense of hearing from his position inside the back of the truck. He stated the hypnosis session was of no help in recalling anything about the event. Thus, even if appellant had not waived the issue by failing to include the allegation of error in his Belated Motion to Correct Error, he would not be entitled to a new trial on the grounds alleged.

Appellant claims the trial court erred in admitting State's Exhibits 9 and 12 into evidence over his objection for lack of relevancy. These exhibits were photographs of the scene of the crime. Appellant contends the photographs do not meet the test of relevancy or tend to prove or disprove some issue of fact in the case.

 Photographs depicting the scene of a crime are competent and relevant in assisting jurors in orienting themselves and understanding the evidence. *Holland v. State,* (1980) Ind., 412 N.E.2d 77. There is no merit to this claim of error.

Appellant claims the trial court erred in admitting State's Exhibits 10 and 14 into evidence over his objection. These were photographs of Fall Creek Parkway and showed shell casings laying on the pavement. Appellant claims they were erroneously admitted because no adequate foundation for their admission was laid.

 It is true in laying down the requirements for the admission of photographic evidence we have stated it must be established such photographs are "a true and accurate representation of the things they are intended to portray." *Bray v. State,* (1982) Ind., 430 N.E.2d 1162, 1164. In the case at bar the officer who testified concerning the photographs was asked regarding each, "Is this a true and accurate representation"? Clearly the words "of the things they are intended to portray" were left out of each question. However, the record also shows in each case immediately before being asked that question the officer was asked what was depicted in the photographs and he answered those questions. The establishment of a basis for the admission of each photograph was accomplished in a continuous line of questioning. *See, Williams v. State,* (1979) Ind., 393 N.E.2d 183. We think it was clear to the judge the witness was saying the photographs accurately depicted that which they were intended to portray. There is no reason for us to hold the basis for the admission of photographic evidence can only be established through the use of a particular set of "magic words" in a single preliminary question.

There is also no merit to the claim these photographs were of such poor quality they could not possibly accurately depict that which they were intended to portray. The photographs purport to depict shell casings laying on the pavement of the road. Though the casings are small and would not easily be discerned to be shell casings unless someone had first described them as such, it is not difficult to identify the shell casings with that knowledge in mind.

There was no error in admitting State's Exhibits 10 and 14 into evidence.

Appellant claims the trial court erred in admitting into evidence over his objection State's Exhibit 16. This exhibit was a photograph of the decedent's body lying on the autopsy table before the autopsy was performed. Another exhibit, State's Exhibit 17, was also admitted into evidence. This exhibit was a photograph of the decedent's body taken from a closer distance and showing the body from the groin up. State's Exhibit 16 showed the body from the knees up.

Appellant contends the admission of State's Exhibit 16 into evidence was error because it was merely a duplicate of Exhibit 17 and served no purpose other than to inflame the passions of the jury. He cites Justice DeBruler's dissent in *Carroll v. State,* (1975) 263 Ind. 696, 338 N.E.2d 264, in support of his contention the relevancy of the photograph was outweighed by its prejudicial effect.

 It is true we have occasionally held the admission of autopsy photographs of the body of the victim of a crime to be reversible error. *See, e.g., Kiefer v. State,* (1958) 239 Ind. 103, 153 N.E.2d 899. The key to determining whether reversible error has been committed is whether the prejudicial effect of the photographs outweighs their relevancy. Prejudicial effect, if it exists at all, can be due to the gruesomeness of the photographs or their cumulative nature. *Rowan v. State,* (1982) Ind., 431 N.E.2d 805; *Webster v. State,* (1981) Ind., 426 N.E.2d 1295. Prejudicial effect does not automatically accrue to a defendant, however, merely because more than one such photograph is admitted into evidence. Nor does such an effect, if there is any at all, automatically outweigh the relevancy of the evidence. *See, Rowan, supra; Webster, supra; Walker v. State,* (1980) Ind., 409 N.E.2d 626.

■ **1033**

State's Exhibit 16 shows the fatal wound and additional non-fatal gunshot wounds to the thigh. State's Exhibit 17 shows only the fatal wound. Clearly a witness is permitted to describe the nature and extent of wounds suffered by the victim of a homicide. Since there is nothing in either photograph a witness would not be permitted to describe verbally, each was relevant. *Rowan, supra.*

State's Exhibit 16 does not show the kind or degree of gruesomeness or morbidness that led this Court or Justice DeBruler in the *Carroll* case, to say the prejudicial effect of the photograph outweighed its relevancy. There was no error in admitting it into evidence.

Appellant claims the trial court erred in admitting into evidence over his objection State's Exhibits 20, 21, and 22. These exhibits were alleged to be the bullets taken from the body of the decedent. Appellant claims a proper chain of custody was not established for allowing the admission of the bullets into evidence. He apparently premises this argument on the fact the bullets were for a time in the hands of a third party, the doctor who performed the autopsy, before they came into the hands of the police.

Dr. Aguilar, the pathologist, did not testify at the trial. However, Sergeant Mike Smilko of the Marion County Sheriff's Department testified he was present at the autopsy. He testified that when Dr. Aguilar removed the bullets from the body of the decedent he marked his initials on the bullets and handed them to Sergeant Smilko. He testified he placed the bullets into three boxes which he marked with his own initials and Dr. Aguilar signed as well. When at trial he was handed the three boxes marked State's Exhibits 20, 21, and 22, he identified the boxes by his initials and Dr. Aguilar's signature, which he said he was familiar with. He further identified the bullets inside each box as the same bullets Dr. Aguilar had removed from the decedent's body and handed to him. He finally testified each bullet was in substantially the same condition as it was when it

was removed from the body. Appellant does not challenge the sufficiency of the evidence concerning the whereabouts of the bullets after Sergeant Smilko acquired them.

■ The State's burden in proving a chain of custody is to offer evidence showing the continuous whereabouts of the exhibits. *Jones v. State,* (1981) Ind., 425 N.E.2d 128. The mere possibility the evidence could have been tampered with and a substitution or material alteration of it could have been accomplished does not make it inadmissible. *Id.* The State met its burden of proving the continuous whereabouts of the bullets. There was no error in admitting State's Exhibits 20, 21, and 22 into evidence.

Appellant contends the trial court erred in sentencing him on both Count I, which was for felony murder, and Count II, which was for the underlying felony of attempted robbery.

■ The State correctly concedes the trial court erred in sentencing appellant on both counts. Where a conviction for felony murder is obtained along with a conviction for the felony relied on in charging and proving the felony murder, sentencing can occur only on the greater felony of murder. *Biggerstaff v. State,* (1982) Ind., 432 N.E.2d 34; *Roberts v. State,* (1978) 268 Ind. 348, 375 N.E.2d 215; *Candler v. State,* (1977) 266 Ind. 440, 363 N.E.2d 1233.

The case is remanded to the trial court with instructions to vacate the sentence imposed upon the conviction for attempted robbery. The trial court is in all other things affirmed.

All Justices concur.