**Gerald BAY, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 3-785-A-181.**

Court of Appeals of Indiana, Third District.

March 18, 1986.

*Seymour National Bank v. State* (1981), Ind., 428 N.E.2d 203, 204. No such question is involved in this case.

Barrie C. Tremper, Chief Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

Gerald Bay appeals his convictions for Possession of Marijuana and Maintaining a Common Nuisance, both Class D felonies. Bay raises the following issues:

1. Did the State establish a sufficient chain of custody for samples of marijuana admitted into evidence?

2. Was the evidence sufficient to sustain the convictions?

3. Did an alleged conversation between a testifying police officer and a non-testifying police officer violate a separation

of witnesses order, and thus violate Bay's due process?

In addition, the State raises the following issue:

4. Did the trial court err in not ordering that Bay's sentences for the instant convictions be served *consecutively* to sentences from convictions for which Bay was on probation when he committed the instant crimes?

We remand for correction of sentences; we affirm the trial court in all other things.

The evidence favorable to the State is as follows. On October 20, 1983, John Levandoski was employed by the Narcotics Division of the Fort Wayne Police Department as a confidential informant. Levandoski was acquainted with Gerald Bay through Jack Fuller, from whom Levandoski had been making drug purchases in his capacity as a confidential informant. Some of the purchases (approximately six) occurred or were arranged at Bay's home. During two of these meetings between Levandoski and Fuller, Bay was present. On at least one occasion Bay ingested drugs in Levandoski's presence.

On October 20, Levandoski met Bay and Fuller at Bay's home to arrange a drug transaction. The house smelled strongly of marijuana. Levandoski gave to Bay and to Fuller a sample of what Levandoski thought was cocaine, but what actually was a cocaine substitute. In return, Bay gave Levandoski a handful of marijuana as a sample of a larger quantity (twenty-five pounds) Bay and Fuller were prepared to trade for an unspecified amount of cocaine.

Bay left the room to obtain the sample of marijuana that he had given to Levandoski. Later, when Bay returned, he had a handful of marijuana which he placed in a plastic bag. Bay told Levandoski, "Here's the sample, go ahead and check it out." Record at 224. Levandoski then left Bay's

house with the sample of marijuana, which he immediately turned over to Officer Dennis Cismowski of the Fort Wayne Police Department. Based on this sample and the information provided by Levandoski, Officer Cismowski obtained a warrant to search Bay's house.

When Officer Cismowski entered Bay's house to execute the warrant the first thing he noticed was the strong odor of marijuana. Both Levandoski and Officer Cismowski testified that the odor was of non-burning marijuana, or marijuana in its "drying" form. In the course of his search Officer Cismowski discovered eighty-seven pounds of marijuana drying on homemade racks in Bay's basement. Bay was then arrested.

## I.

### Chain of Custody

■ At trial the State introduced, over Bay's objection, samples of the marijuana discovered in Bay's basement. Bay argues that an insufficient chain of custody was established for the samples and that their admission into evidence by the trial court was error. Specifically, Bay asserts that the absence of testimony by Detective Linda Johnson, who transported the samples from the police evidence room to the forensic chemist's laboratory, is a fatal gap in the State's chain of custody. We disagree.[1] The rationale of the rule requiring the State to demonstrate a chain of custody for evidence it introduces at trial is well known:

The purpose behind requiring a continuous chain of custody from seizure to admission at trial is to lay a proper foundation connecting the evidence with the accused while negating any substantial likelihood of tampering, loss, substitution, or mistake. *Arnold v. State,* (1982)

---

1. While Bay's brief mentions other "gaps" in the chain of custody, his Motion to Correct Errors raised—and thus preserved—only the issue created by the absence of testimony by Detective

Johnson. Nevertheless, for reasons which we discuss in our review of the State's chain of custody, we are convinced that none of the deficiencies alleged by Bay is significant.

Ind., 436 N.E.2d 288. Although a continuous chain of custody must be shown, the State need not exclude every remote possibility of tampering. *Stewart v. State* (1982) Ind., 442 N.E.2d 1026. Instead, the State need only provide reasonable assurance that the exhibit has passed through various hands in an undisturbed condition. *Stewart, supra.* The mere possibility of tampering does not render an exhibit inadmissible. *Wade v. State* (1979) 270 Ind. 549, 387 N.E.2d 1309.

*Schlabach v. State* (1984), Ind.App., 459 N.E.2d 740, 743 *reh. denied.* We turn, then, to whether the State provided reasonable assurance that the samples of marijuana passed through the various hands in an undisturbed condition.

The marijuana in question first came into the State's possession during the search at 606 Lower Huntington Road, where the Fort Wayne Police Department loaded it into two trunks. The trunks were taken to department headquarters and locked in an evidence storage office. A continuity slip was prepared with the control number 83–49306.[2] A few days later the marijuana, still in the trunks, began to mold. Sergeant Don Smith, head of the Fort Wayne Police Department's Narcotics Division, was advised by the prosecutor to remove a sample of marijuana from each trunk and submit the sample to a forensic chemist for analysis. On Sergeant Smith's instruction, and in his presence, Detective Linda Johnson removed a handful of marijuana from each trunk and sealed each handful into a plastic evidence bag. On each of these two bags she placed a white tag; on each tag she wrote her initials and the control number 83–49306.[3] Detective Johnson then signed the control slip and dated it October 24, 1983, to show she had assumed custody over the evidence. According to Sergeant Smith, Detective Johnson then took the evidence to the laboratory of Barker Davie, a forensic chemist.

Davie testified that on October 24, 1983, Detective Johnson delivered two sealed bags of marijuana to him at his laboratory. Davie put his name on the tag affixed to each bag and signed and dated the continuity slip. His subsequent analysis confirmed that both bags contained marijuana. After completing the analysis, Davie resealed the bags and locked them in his evidence storage room where they remained until Detective Johnson picked them up. At trial Davie testified that the exhibits were in the same condition as when he received them from Detective Johnson.

Our review of the forgoing evidence leads us to conclude that the trial court's ruling admitting the samples of marijuana into evidence was proper. The record shows that the marijuana was continuously in police custody except when it was at the forensic chemist's laboratory. While at the chemist's laboratory the evidence was either being analyzed or was stored under lock and key. Thus, the continuous whereabouts of the evidence has been established.

■ Moreover, the evidence bags were sealed at the Fort Wayne Police Department and the forensic chemist had to break that seal to conduct his analysis. He then resealed the bags before returning them to police custody. This sealing and resealing precludes any substantial likelihood of tampering, loss, substitution, or mistake. *Smith v. State* (1983), Ind.App., 452 N.E.2d 160, 166. Thus, the State provided reasonable assurance that the exhibits passed through the various hands in an undisturbed condition. We hold that the state showed a sufficient chain of custody for exhibits ten (a) and ten (b) and that, therefore, the trial court's admission of the exhibits into evidence was proper.

2. A "continuity slip" is a document which is signed and dated by each person assuming control over the evidence.

3. At trial the bags were marked as State's Exhibits ten (a) and ten (b).

## II.

### Sufficiency of Evidence

■ Bay purports to challenge the sufficiency of evidence supporting his conviction. He contends that the eighty-seven pounds of marijuana was hidden in his home while he was away on vacation. Bay claims he "had no knowledge of marijuana at the premises and there is no evidence in the record to reveal the contrary." Appellant's Brief at 22. Bay is wrong. In addition, we find that his challenge to the sufficiency of evidence is actually a thinly-veiled attack on the jury's assessment of the credibility of witnesses.

We first note that Bay's argument suffers from important inconsistencies. For example, appellate counsel on page 20 of his brief correctly states the standard we must use in reviewing a challenge to the sufficiency of evidence:

The defendant's appellate counsel is aware that when considering sufficiency of evidence questions, the reviewing court:

must consider the evidence most favorable to the State and the reasonable inferences to be drawn therefrom. If, from that point of view, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt of the crime for which he was convicted, then the judgment of the trier of fact would be affirmed." *Robinson v. State*, (1974) 317 N.E.2d 850.

The defendant's counsel is also aware that the appellate courts will not reweigh the evidence nor rejudge the credibility of witnesses.

Appellant's Brief at 20. Having acknowledged our limited standard of review, Bay's appellate counsel nevertheless immediately makes clear that ignoring evidence in the record and judging credibility of witnesses is precisely what he wishes us to do. In the paragraph immediately following the above-quoted statements, Bay's counsel concedes there is *some* evidence in the record to support a finding that Bay knew of the marijuana drying in his house:

"The testimony of John Levandoski, the confidential informant, *is the only evidence in the record* to indicate that the defendant, Gerald Bay, had any knowledge of marijuana at the premises on 606 Lower Huntington Road."

Appellant's Brief at 21 (emphasis added). But the veil falls completely away from Bay's attempt to have us judge the witnesses' credibility with the following statements:

Jack Fuller further testified that the marijuana was placed there during a period of time when the Bays were on vacation and that they had no knowledge of the marijuana in the home. The defendant would submit that the defendant's witness, Jack Fuller, is entitled to the same credibility, if not more, than that of confidential informant, John Levandoski, who testified for the State.

Laid bare, Bay's argument is nothing more than a challenge to the credibility of State's witness John Levandoski. Such an evaluation is, as we have said many times, properly the trier of fact's function. Levandoski's testimony, which the jury by its verdict apparently deemed credible, was as follows:

Q. (By Deputy Prosecutor) Did you discuss the transaction with Mr. Fuller and Mr. Bay [while at Bay's home]?

A. (By Levandoski) Yes I did.

Q. Did you give them a sample of what · · ·

A. I gave them a sample of the what I told them was cocaine and they both tried it and Mr. Bay returned—he left the room we were in and returned with a handful of marijuana, which then was placed in a plastic bag.

Q. What did he say?

A. He said, "Here's the sample, go ahead and check it out."

Record at 224. In addition, both Levandoski and Officer Cismowski testified that Bay's house reeked with the odor of mari-

juana. Finally, Levandoski testified that under the proposed transaction Bay and Fuller were to provide Levandoski twenty-five pounds of marijuana. There is ample evidence from which the jury could have found that Bay was aware of the marijuana in his house. His claim that the evidence was insufficient on this point is without merit.

## III.

### Separation of Witnesses.

Bay also argues that he was denied a fair trial by violation of a separation of witnesses order. A defense witness reported that she had overheard two police officers, Smith and Morales, state that "they had to do whatever was necessary to get Gerald Bay." Appellant's Brief at 24.

■ Initially, we note the unusual posture of Bay's argument that Officers Smith and Morales violated the separation of witnesses order: Officer Morales was not a witness at trial, nor is there any indication he was ever scheduled to be a witness. In fact, there is nothing in the record to indicate that Officer Morales was even covered by the separation of witnesses order. Given the rationale behind the separation of witnesses rule—i.e., to prevent one witness from "coloring" his testimony after hearing another witness testify—we think Bay's argument is misplaced. Since Officer Smith testified and Officer Morales did not, there simply was no danger of "coloring" testimony.[4] *Arguendo*, even if both officers *had* been covered by the separation of witnesses order, the trial court would have been within its discretion in allowing Officer Smith to testify. Even where a clear violation of a separation order is shown, the trial court may permit the violating witness to testify. *Baysinger v. State* (1982), Ind.App., 436 N.E.2d 96, 100

*reh. denied.* This is particularly true where, as here, there is no evidence of any connivance or collusion by the party calling the witnesses. *Id.* Bay has cited no part of the record—and our inspection has revealed none—which might suggest that the prosecutor connived with the witnesses. Bay's allegations of "witness misconduct" are without merit.

## IV.

### Sentencing

■ Having disposed of Bay's arguments we turn to a sentencing issue raised by the State. The State asserts that the trial court erred in not requiring that Bay's sentences for the instant convictions be served *consecutively* to Bay's sentences for prior convictions.[5] The State's argument is based on Ind.Code 35-50-1-2(b) which provides:

(b) If a person commits a crime:

(1) after having been arrested for another crime; and

(2) before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

(In circumstances other than those set forth in section (b) above, the trial court has discretion to determine whether sentences shall run concurrently or consecutively. Ind.Code 35-50-1-2(a).)

The State contends, and the record shows, that Bay was convicted on October 15, 1981 (almost exactly two years before his arrest for the instant crimes), of Dealing in Marijuana (for which he received a two-year sentence) and Dealing in a Controlled Substance (for which he received a

---

4. We note that Bay does not challenge the veracity or accuracy of Officer Smith's testimony, e.g., by suggesting that it was perjured, and we see no basis for any such allegation.

5. Because Bay filed no reply brief, the State's argument on this point is unchallenged.

six-year sentence). The sentences for these prior convictions were suspended and Bay was placed on five years probation. Bay's term of probation for the prior convictions is not over until October, 1986. The present crimes were committed on October 20, 1983, while Bay was on probation for the 1981 convictions. Therefore, the trial court was without discretion and erred in not ordering that the sentences for the instant convictions be served consecutively to the sentences imposed for Bay's 1981 convictions. *See, e.g., Chandler v. State* (1983), Ind., 451 N.E.2d 319, 321 (remand-ing case for correction of sentence pursuant to Ind. Code 35–50–1–2(b)).

We remand to the trial court for correction of sentence as set forth above. We affirm the trial court in all other things.

BUCHANAN, C.J., (by designation), and GARRARD, J., concur.