**Melvin D. INGRAM, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 480S93.**

Supreme Court of Indiana.

June 22, 1981.

Charles E. Doyle, Michigan City, for appellant.

Theodore L. Sendak, Atty. Gen., Jeff G. Fihn, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Ingram was convicted following a trial by jury of the offenses of rape by using or threatening the use of a deadly weapon, a class A felony; criminal deviate conduct by using or threatening the use of a deadly weapon, a class A felony; and criminal confinement while armed with a deadly weapon, a class B felony. For these convictions he received respectively sentences of thirty years, thirty years, and ten years.

In this appeal appellant raises three primary issues, namely:

(1) Whether the trial court properly permitted the State to introduce evidence of pre-trial and the in-trial identification of him by the putative victim; and

(2) whether the trial court properly permitted introduction of evidence by the State which had been ordered disclosed in a pre-trial discovery order; and finally

(3) whether the evidence was sufficient to convict.

## I.

Appellant sought unsuccessfully in the trial court to suppress testimony of the prosecutrix and other witnesses describing the pre-trial identification of him by her and her direct in-trial identification of him as well. Evidence of positive pre-trial identifications of the accused by witnesses to a crime is inadmissible as inconsistent with the requirements of due process of law if it is the product of police procedures which are unduly and unnecessarily suggestive of guilt and create a substantial likelihood of irreparable misidentification. *Neil v. Biggers,* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Parker v. State,* (1981) Ind., 415 N.E.2d 709. Furthermore, direct evidence at trial by witnesses subjected to such condemned procedures is also inadmissible unless a basis, independent of such procedures as gleaned from a totality of the circumstances, supports it. *Foster v. California,* (1969) 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; *Swope v. State,* (1975) 263 Ind. 148, 325 N.E.2d 193.

The evidence supporting the decision of the trial court shows that the victim was abducted from a public road between 2:30 and 3:00 a. m., on January 20, 1979, and sexually mistreated in a car for more than an hour thereafter by a lone male wielding a knife. He released her and she returned to her home at 4:20 a. m., and told her brother of her misfortune. Police were notified of the incident at 5:07 a. m., and the discovery of a car meeting the description given by her was located in the vicinity of the attack, stuck along a road. Within a few minutes, investigation led two police officers to a house in town and they arrived there in a patrol car, and the prosecutrix was driven by her brother to the same place. The officers went to the door and in due course told appellant that a crime had been committed and that the victim was outside in a car and they asked him to come outside and let her take a look at him. He agreed and accompanied them up to within close proximity to the drivers side of the car in which the prosecutrix was seated on the passenger side. She was asked if appellant was the person. She responded in sub-

stance that she thought so but that she was not sure. Within hearing of her, the officers then told appellant that he would have to come with them to the police station. He then said that he would do so and that he would like a chance to get his coat, and he and the officers returned to the house, shortly thereafter emerging together, appellant wearing a green jacket. As they proceeded past the car in which she was still seated, on their way to the police car, she began crying and stated in a manner that the officers could hear, "That's him, that's him." The officer then asked her if she was positive and she replied, "That's the man."

■■■ Confrontations of this sort between victim and suspect, staged by the police for identification purposes within a short time after a crime, while entailing suggestive force, are not deemed at law to be per se violative of due process. *McPhearson v. State*, (1970) 253 Ind. 254, 253 N.E.2d 226; *Lewis v. State*, (1970) 252 Ind. 454, 250 N.E.2d 358. They may however be so violative depending upon discrete circumstances involved and are to be judged according to the analysis set forth in *Dillard v. State*, (1971) 257 Ind. 282, 274 N.E.2d 387; *Dewey v. State*, (1976) 264 Ind. 403, 345 N.E.2d 842. The court should consider among other things facts disclosing the verbal and other conduct of the police officers at the time the confrontation is had, and facts bearing upon the opportunity of the witness to have observed the perpetrator during the crime. Here, the conduct of the police officers surrounding their presentation of the suspect to the victim was the sort necessarily present in any such confrontation, and while suggestive in character was not unduly or unnecessarily so. The evidence of the pre-trial identification of the suspect by the victim was therefore admissible as was her direct in-trial testimony to the same purpose.

■■■ Appellant argues that between the victim's first equivocal identification of him and her second positive one, the police applied pressure to her by stating to her that she had to be sure. While undisputed

evidence of such a statement by police officers during that period of time would be a circumstance favoring a conclusion that the identification was inadmissible, coupled with the circumstances of this case it would not have required that conclusion. More importantly however, the record does not disclose that such a statement was made between these two points in time. The sole reference to such statement is contained in the testimony of Officer Litchfield, the detective who took charge of the case an hour or two after appellant's arrest. In it he described what had been stated to him by the victim's brother, Bruce Neulieb, on the evening of the day of the crime:

"Q. And did he [Bruce Neulieb] say that they brought him [appellant] out and that they asked her if this was the subject and she stated, 'Yes, but I can't be sure'?

A. Yes, sir.

Q. Did Bruce Neulieb also say *at the same time*, 'And the officer told her that she had to be sure'?

A. He might have stated that to me, yes.

Q. Does your report indicate that?

\* \* \* \* \* \*

A. Yes, sir, my report states that." (Emphasis added.)

Evidently, appellant reads this portion of the record, as establishing that the officer told the victim at the scene of the confrontation, *between her first equivocal and her second positive identification of him*, that she had to be sure. Obviously appellant misreads this section. It establishes that Bruce Neulieb made the second statement attributed to him in this excerpt *at the same time* that he made the first statement attributed to him, and evidences only with regard to the officer's statement to the victim that it came after appellant emerged from the house. Indeed it is more probable than not that the reference in this excerpt to the police officer's statement to that same effect was made by the officer immediately *after* she commenced crying and made the second, more positive identifica-

tion. This part of appellant's argument is not supported by the record.

■ At the time the victim and the suspect came together, he was not under any form of actual physical restraint and indeed he was acting in a cooperative manner. There is no evidence that the police were hostile to him or that they regarded him as being guilty. Their statement following her first uncertain identification of appellant that he should come to the police station would have been regarded by her as nothing more nor less than the natural and reasonable consequence of that first identification. In her testimony she explained the reason for that first uncertain identification of appellant. According to her it was the result of the fact that she had not seen him until he stood immediately adjacent to the car on the driver's side and that she could not get a good look at him in that position and in the poor light. She had to lean over to see him through the car window. When she saw him the second time as he emerged from the house and proceeded toward the police car, she got a better look at his face and also recognized the green jacket he had put on. Under the circumstances presented, we do not believe appellant was denied due process of law.

## II.

■ In giving testimony in support of his alibi defense, appellant testified that during the time of the offense he was at a tavern and had talked there with one Lonnie Garrett. As described, this tavern consisted of at least two separate rooms, the backroom reserved for gambling, and the other for dining and dancing. In rebuttal, one Officer Day testified that he had talked with Lonnie Garrett who upon inquiry had replied referring to appellant that, "the young man had not been in there gambling with him." Appellant contends on appeal that he had not been informed of the existence of Officer Day as a potential witness or of the statement of Garrett as required by the trial court's broad discovery order. Had there been a failure of the trial court to grant some form of sanction against the

prosecution for its failure to produce the witness' name and the statement, as there was not because none was requested, such failure would have been harmless here. The tendency of the Garrett statement to rebut appellant's alibi defense was *de minimis*. It was within reason for trial counsel to ignore the issue.

## III.

■ Appellant finally claims that the evidence of the crimes was insufficient to convict because it did not sufficiently show the use of a deadly weapon, to-wit: a knife, the presence of the defendant at the scene of the crime, the use of force, and that the victim had been forced to commit fellatio upon him. Pursuant to our responsibility as an appellate court, we are restricted to looking to the evidence and reasonable inferences therefrom which support the verdict, in determining these questions. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. Opposing evidence and inferences which support acquittal create conflicts calling for resolution by the trier of fact. Discrepancies in the testimony of witnesses are also to be considered by the trier of fact. Such matters cannot be considered by this Court in resolving sufficiency issues. We will affirm a conviction if the evidence and reasonable inferences therefrom supporting the verdict is of substantial probative value and is such that a reasonable trier of fact could infer from it that appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657. The testimony of the prosecutrix is direct and to the point on each of the issues raised. It is susceptible of belief beyond a reasonable doubt. She testified that appellant was her assailant; that he held a knife in his hand and pressed it against her; that he ordered her to commit fellatio upon him and that she did so; and that he ordered her to disrobe and submit to sexual intercourse which she did.

Appellant makes further complaint regarding the fact that the prosecutrix testified that she had taken a man home that night after she had met him and had drinks

with him at a tavern. She testified further that she entered his apartment with him about two o'clock and left his apartment at two-thirty a. m., and that during such time had not had sexual relations with him. Appellant contends that this testimony when coupled with other similar statements and discrepancies could not have done other than to have created reasonable doubt of the presence of force. Such matters were for consideration of the jury in arriving at its assessment of the evidence in the course of deliberating upon its verdict, after proper instructions by the court, and final summation of counsel. The evidence was not insufficient upon the points raised, and the prosecutrix's testimony was not such that it was not susceptible of belief.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.