David Wayne WAGNER, Appellant,

v.

STATE of Indiana, Appellee.

No. 582S200.

Supreme Court of Indiana.

Feb. 14, 1985.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant David Wayne Wagner was found guilty by a jury in the Grant Circuit Court of the crimes of murder, class A felony robbery and class A felony burglary. He subsequently was sentenced by the trial court to sixty years imprisonment for the murder conviction, fifty years imprisonment for the robbery, and fifty years imprisonment for the burglary, all terms to be served consecutively. He now directly appeals and raises the following twenty-five generally indexed issues:

1. motion to suppress;
2. discovery;
3. plea bargain;
4. motion to strike;
5. motion for discharge;
6. sufficiency of the evidence;
7. jury conduct;
8. trial court conduct;
9. motion for mistrial;
10. witness Wagner;
11. exhibits 6, 7, and 8;

12. alleged cumulative evidence;
13. alleged hearsay testimony;
14. witness Waldo;
15. exhibits 1 and 56;
16. exhibits 2 and 3;
17. witness Hopper;
18. witness Lopez;
19. exhibits D, E, F and G;
20. witnesses Reece and Leist;
21. exhibits 45, 46, and 47;
22. witnesses Manges and Moore;
23. motion to let to bail;
24. presentence investigation report; and
25. sentencing.

At approximately 10:00 p.m. on May 16, 1980, Marcella and Raymond Waldo retired for the evening in their home in Shideler, [Delaware County] Indiana. Later, Mrs. Waldo heard a noise emanating from the front door of the residence and arose to check the area. When Mrs. Waldo returned to the bedroom, she heard a gunshot and felt a bullet pass by her. She next observed a person whom she later identified as Defendant standing near the bed and felt a gun press against her neck. While she was attempting to assist her husband who had been shot while lying in bed, Defendant inquired as to the location of her husband's wallet and money. After Defendant had obtained the wallet and money, he also stole several guns, Mrs. Waldo's wallet, and the car keys. Defendant left the residence but later reentered by breaking a window in the locked rear door of the residence with his gun. He finally left the area taking the Waldo automobile with him. Mrs. Waldo walked to a neighbor's residence and summoned the police. Officer Walter Blackmere of the Eaton Police Department arrived at the neighbor's residence, obtained a statement from Mrs. Waldo, and issued an all points bulletin by radio to watch for the Waldo's 1972 green Ford LTD which had been stolen.

Officers Larry Springer and Jeffrey Leist of the Muncie Police Department meanwhile were working at the Delaware County Jail when they heard the broadcast concerning the Waldo murder and the advisement to watch for the 1972 green LTD Ford. As they were leaving the jail sometime shortly after 2:00 a.m., Leist observed a car which appeared similar to the description of Waldo's vehicle. The officers followed the vehicle, determined that it was a green Ford LTD and transmitted the license plate number to the Muncie Police Department to identify the owner. The green Ford made a right turn onto Main Street where it stopped and the driver exited the vehicle and started to walk across the street. About this time, the officers activated the red light on top of their vehicle and called the driver to return to the vehicle where they asked him for his driver's license and identification. As the driver was leaning into the automobile to reach into the glove compartment, the officers noticed three shotguns on the rear floor of the vehicle. About this time they also got a return call from the Muncie Police Department confirming that the green Ford belonged to the Waldos. The officers immediately placed the driver under arrest, handcuffed him and advised him of his *"Miranda"* rights. *See Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Defendant was the driver. Officer Lawrence Pritchard of the Indiana State Police later searched the vehicle at the Muncie Police Department and found, *inter alia*, a purse, jacket, hat, camera, and three shotguns.

While at the police station, the *"Miranda"* warnings were again administered to Defendant and he signed a waiver of rights form and gave Officer Richard Reece a statement. Officer Steve Schlegel of the Delaware County Police Department conducted a neutron activation test to determine if there was gunshot residue on Defendant's hands and William Kinard of the Bureau of Alcohol, Tobacco, and Firearms, analyzed the test and found gunshot residue. On May 30, 1980, Officer Russell Walker of the Indiana State Police conducted a voice identification lineup. Mrs. Waldo was seated in an interview room and listened to five white males with no distinctive speech accents repeat certain phrases

that were communicated to her by the perpetrator of the instant crimes. Mrs. Waldo did not see the individuals, was not informed as to the identity of any of the individuals and was not told that a suspect was present in the lineup. After several phrases were read by each individual, Mrs. Waldo requested subject No. 2 to repeat the phrases. Mrs. Waldo then identified subject No. 2, the defendant, as the perpetrator of the crimes.

## I

▮ Defendant first claims that the trial court erred by denying his motion to suppress which asserted that the investigatory stop of the vehicle he was driving when arrested was illegal. The State points out that Defendant has waived this issue since he did not object to the admission of certain of the evidence recovered from the vehicle. When a motion to suppress has been overruled and the evidence sought to be suppressed is later offered at trial, no error will be preserved unless there is an objection at that time. *Minneman v. State*, (1982) Ind., 441 N.E.2d 673, *cert. denied*, (1983) 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307. Notwithstanding Defendant's waiver, however, we find that it is apparent that Officers Leist and Springer had sufficient grounds to make the investigatory stop as they did. These officers had been advised of the murder and robbery at Shideler and that a 1972 green Ford LTD had been stolen from the victims. They observed a green Ford LTD which matched the description given of the Waldo vehicle and was the only vehicle on the streets at that early morning hour. The United States Supreme Court has held that the brief stop of a suspicious individual in order to determine his identity may be most reasonable in light of the facts known to police officers at the time. *Adams v. Williams*, (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *Terry v. Ohio*, (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The officers here had sufficient grounds to stop this vehicle and to identify the driver and the automobile. While questioning Defendant about his identity and driver's li-

cense, the police saw weapons in the back of the automobile and obtained information that this was, in fact, the Waldo vehicle. The police therefore were justified in making the investigatory stop and in subsequently placing Defendant under arrest.

▮ Defendant also asserts that his statement to police should have been suppressed because it was given involuntarily and without an intelligent waiver. In support of this contention, Defendant argues that he was so intoxicated at the time his statement was made that he was incapable of knowingly and intelligently waiving his *"Miranda"* rights. The admissibility of a statement is controlled by determining, from the totality of the circumstances, whether or not it was made voluntarily. The same test determines whether a waiver of *"Miranda"* rights has occurred. We review this question as we do any question of fact, that is, we do not reweigh the evidence but look to the evidence supportive of the trial court's ruling to determine if the evidence was substantial and probative and thus sufficient to sustain that ruling. *Tawney v. State*, (1982) Ind., 439 N.E.2d 582, *reh. denied; Chambers v. State*, (1979) 271 Ind. 357, 392 N.E.2d 1156.

▮ Officer Springer testified that when he stopped Defendant on May 18, he detected the odor of alcohol on Defendant's breath. He also testified, however, that Defendant appeared to have full use of his faculties. Officer Reece, who took the statement from Defendant at approximately 3:55 a.m., testified that he also smelled alcohol on Defendant's breath but that Defendant did not appear to be intoxicated. He stated that Defendant appeared to understand when the *"Miranda"* rights were given to him and when he signed a waiver of rights form before proceeding to give his statement. Defendant testified at the suppression hearing that he was an alcoholic, that he had been drinking heavily on May 17, and that he began drinking alcoholic beverages on May 17 at approximately 9:00 p.m. and had his last drink at about 1:30 a.m. on May 18, at least two hours

before Officer Reece took his statement. Both Officer Springer and Officer Reece stated that Defendant was coherent during the time they talked to him and did not appear to be under the influence of alcohol. Since the facts are in conflict and, from a review of the totality of the circumstances, there is substantial evidence to support a finding beyond a reasonable doubt that Defendant's waiver and statement were given voluntarily, we find no error in the trial court's overruling of Defendant's Motion to suppress his statement.

 Defendant further argues that the identification of his voice by Mrs. Waldo should have been suppressed since the voice identification procedure utilized was unnecessarily suggestive. His contention seems based on the fact that Mrs. Waldo asked that Defendant repeat certain phrases while none of the others in the lineup were required to repeat the phrases. We find no merit to this contention, however. Mrs. Waldo asked that subject No. 2 repeat the phrases after she had heard all of them make the same statements. The police did not request Defendant to speak more than the others nor did they instruct Mrs. Waldo to hear Defendant a second time. This was done by her to clarify her identification. There was no showing that this lineup was impermissibly suggestive in any manner. *See Smith v. State*, (1982) Ind., 432 N.E.2d 1363; *Ingram v. State*, (1981) Ind., 421 N.E.2d 1103; *Porter v. State*, (1979) 272 Ind. 267, 397 N.E.2d 269. Furthermore, Defendant did not object when the voice identification evidence was admitted so he has waived any further consideration of this issue. *Riley v. State*, (1981) Ind., 427 N.E.2d 1074.

## II

 Defendant next contends that he was denied a fair trial because the State failed to comply with the trial court's discovery order. In addition, Defendant claims that the trial court abused its discretion by refusing to exclude certain testimony and exhibits or, in the alternative, by refusing to grant a mistrial since the names of the witnesses and the nature of the exhibits were not furnished to Defendant during the regular discovery period as required by the trial court's discovery order. Questions of discovery are to be determined by the trial court in its discretion and, absent a showing of clear error and resulting prejudice to the defendant, its ruling will not be overturned on appeal. When the State fails to disclose all pertinent information prior to trial, a defendant may either move for a continuance or for exclusion of the evidence. While a continuance is usually the proper remedy for failure to disclose, an exclusion may be warranted when the State has made a flagrant and deliberate refusal to comply with discovery. *Murray v. State*, (1982) Ind., 442 N.E.2d 1012. There is no showing here, however, that the State deliberately or inadvertently concealed the witnesses and exhibits in question. Furthermore, Defendant did not request a continuance and, in fact, indicated that he had adequate time to examine the exhibits and the witnesses prior to their actual admission.

 Walter and Luther Waldo were called to testify concerning the personal effects of their brother, the deceased victim. Their names were not included on the State's witness list because the State did not anticipate their presence at trial. When it was discovered that the two brothers could identify the guns and other possessions of Raymond Waldo, the State proposed to call them as witnesses. Although Defendant objected to the testimony of these two brothers, defense counsel admitted to the trial judge that no prejudice would inure to Defendant and that a continuance was not needed for him to examine them. Witness Richard Moreillon did not communicate to police until after Defendant's trial had commenced that he was a neighbor of the Waldos and that he saw a green Ford LTD leave the Waldo's driveway during the evening of May 17, 1980. The State did, however, assist the defense in the corroboration of Mr. Moreillon's testimony before presenting it. State's exhibits 34 through 42 were items stolen from

the Waldo residence which were found in a vest pocket after the trial had commenced. Although the defense had an opportunity to examine this vest, neither the defense nor the State realized the exhibits were in the pocket. Again, Defendant was given ample opportunity to examine the exhibits before they were offered into evidence and Defendant did not claim he needed a continuance before their tender. Another contested exhibit was that of the fingerprints of Mrs. Waldo. While dusting for prints at the crime scene, the police found fingerprints on a "coke" bottle but were unable to identify them. When the identification of the prints came into question during the trial, the police took the fingerprints of Mrs. Waldo and determined that the prints on the "coke" bottle were hers. Defendant again was given an opportunity to make his own analysis of the prints before they were admitted. In none of these cases did Defendant request a continuance and, in fact, in each case Defendant indicated he did not require one. His request was that all of these witnesses and exhibits be excluded since the State had failed to comply with the discovery orders originally entered. Defendant made no showing that the State deliberately concealed this evidence to gain an advantage during the trial and, considering all the facts and circumstances before the trial judge, we cannot say that the trial judge abused his discretion in this regard.

Defendant also claims that the trial court erred by denying his motion for sanctions to compel discovery and by denying his motion for continuance. Defendant again argues that he was denied a fair trial since the State failed to produce certain items of evidence during discovery. The record reveals that Defendant filed a motion for discovery on May 30, 1980, a motion for production of copies of evidence held by the State on April 20, 1981, and a motion for sanctions on August 4, 1981. On September 23, 1981, the trial court denied Defendant's motion for sanctions but ordered the State to comply with the discovery order. Also on September 23, Defendant filed a motion for continuance which was denied by the trial court. In his brief, Defendant does not specifically disclose which items of evidence were not produced by the State pursuant to the discovery orders. He merely asserts that the State failed to produce "certain items of evidence." Ind.R.App.P. 8.3(A)(7) provides: "The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." Before Defendant is entitled to a reversal he must affirmatively show that there was error prejudicial to his substantial rights. This Court on review will not search the record to find grounds for reversal. *Akins v. State,* (1981) Ind., 429 N.E.2d 232, *reh. denied.* Defendant accordingly has waived any error on this issue.

### III

Prior to trial the State offered Defendant a plea agreement whereby Defendant had the opportunity to plead guilty to murder with dismissal of the burglary and robbery charges. Defendant rejected the offer. Subsequent to the testimony of Richard Moreillon at trial, Defendant stated he would accept the terms of the plea agreement but the State declined. Defendant now alleges prejudice asserting that had he been aware of the testimony of Mr. Moreillon, he would have consented to the agreement at the time it was offered. Be that as it may, Defendant raises no appealable issue here since a defendant has no absolute right to have a guilty plea accepted. *Stroud v. State,* (1983) Ind., 450 N.E.2d 992.

### IV

Defendant next claims that the trial court erred by denying his motions to strike certain pleadings of the State because the State improperly served those pleadings. On June 16, 1980, September

11, 1980, and August 5, 1981, the State filed motions to compel discovery and motions *in limine*. On August 14, 1981, and September 11, 1981, Defendant filed motions to strike the State's motions for discovery and motions *in limine* since the prosecutor had failed to serve him copies. On August 19, 1981, Defendant received copies of the State's motion and on September 23, 1981, the trial court denied Defendant's motions to strike. Defendant now claims that the trial court erred by denying his motions to strike. Although Defendant is correct that Ind.R.Crim.P. 18 requires that a copy of every pleading and motion be served upon each attorney for each adverse party, this Court has held that the failure to serve on opposing counsel a copy of a motion does not necessarily constitute reversible error. Rather, we have held: "[I]t is incumbent upon the party who complains of a failure to comply with the rule to call it to the court's attention at the first opportunity; otherwise compliance is waived." *Jurdzy v. Liptak*, (1962) 243 Ind. 1, 6, 180 N.E.2d 530, 532, *reh. denied; see also Funk v. State*, (1981) Ind., 427 N.E.2d 1081, *reh. denied* (1982); *Enderle v. Sharman* (1981) Ind.App., 422 N.E.2d 686, *reh. denied*. The record in the instant case shows that upon receipt of Defendant's motion to strike, the State mailed copies of the motion to compel discovery and of the motion *in limine* to the defense. Defendant fails to show how he was harmed by the trial court's denial of his motion to strike. Accordingly, we find that the trial court did not abuse its discretion by denying said motions to strike and we find no error on this issue.

### V

■ Defendant further claims that the trial court erred by denying his motion to dismiss which asserted that the trial date was beyond the one year limitation provided by Ind.R.Crim.P. 4(C). Although Ind.R.Crim.P. 4(C) requires the State to bring a defendant to trial within one year, it also provides that this period will be extended by the length of any delay caused by a defendant's acts. *See Battle v. State,*

(1981) 275 Ind. 70, 415 N.E.2d 39. Determination of what amount of delay is attributable to a defendant's actions must be decided on a case by case basis. *Brown v. State,* (1981) 275 Ind. 441, 417 N.E.2d 333.

■ The record here shows that the information for murder, robbery and burglary was filed on May 27, 1980. It also shows that Defendant requested a continuance on his arraignment and filed an insanity plea. Doctors were appointed and filed their reports in regard to the insanity plea but Defendant subsequently withdrew this plea. A motion for change of venue from the county was filed on June 26, 1980, and venue was perfected to Grant County on July 14, 1980. A petition to be let to bail was filed on June 17, 1980, and hearings on the petition took place on August 29, 1980, September 12, 1980, and February 17, 1981, and on March 4, 1981, Defendant moved to continue the bail hearing. Finally, the motion to let to bail was denied on June 9, 1981. On June 22, 1981, the State filed its second motion for trial setting, the first having been requested in February, 1980. The trial was then set for August 10, 1981. On June 30, 1981, Defendant filed his motion to dismiss pursuant to Ind.R.Crim.P. 4(C). On July 2, 1981, the regular judge disqualified himself and on July 15, 1981, Defendant withdrew his Ind.R.Crim.P. 4(C) motion. The special judge qualified on August 26, 1981, and on September 9, 1981, set the trial for October 5, 1981. On September 11, 1981, Defendant filed his second motion to dismiss pursuant to Ind.R. Crim.P. 4(C). On October 5, 1981, this second motion was denied and the trial commenced. It is apparent from this record that Defendant himself contributed to the delay of the trial of his cause by his numerous motions and requests for hearings. Defendants therefore cannot show that the State delayed bringing him to trial within the framework of Ind.R.Crim.P. 4(C) since his own actions contributed to delays beyond the one year period. The trial court did not err in denying his motion to dismiss pursuant to Ind.R.Crim.P. 4(C).

## VI

Defendant next claims that the evidence is insufficient to support the conclusion of the jury that he was guilty of murder, robbery, and burglary. He specifically claims that there was no evidence to support the conclusion that he had the intent to commit murder at the time he broke into and entered the Waldo residence and also that the evidence was insufficient to support the verdict of the jury that he had knowingly or intentionally killed Mr. Waldo. He further claims that the evidence showed he was in such an intoxicated state that he could not have formed the specific intent necessary to commit the offenses charged. He does not claim, however, that there was insufficient evidence to show that he committed the acts charged.

The presence of a "knowing" intention to kill may be inferred from evidence that a mortal wound was inflicted upon an unarmed person with a deadly weapon in the hands of the accused. *Bryan v. State*, (1983) Ind., 450 N.E.2d 53. Intent to kill may also be inferred from the use of a deadly weapon in a manner likely to cause death. The facts here show that Defendant entered the home of the Waldos by breaking in while in possession of a weapon and that while in the home, Defendant shot the unarmed victim who had not provoked him in any manner. We now find that these were sufficient facts from which the jury could infer that Defendant had the intention to commit murder, robbery and burglary and that he knowingly and intentionally killed the victim.

The evidence concerning Defendant's intoxication during these incidents was conflicting. Although Defendant testified that he consumed a large amount of alcoholic beverages just prior to these crimes, witnesses who observed him shortly after the offenses indicated that he showed no signs of intoxication, that he was able to communicate rationally, and that he appeared and acted normal. Whether or not Defendant's voluntary intoxication prevented him from forming the requisite intent for murder was a question of fact for the jury and one upon which Defendant bore the burden of proof. *Bates v. State*, (1980) 274 Ind. 214, 409 N.E.2d 623. In order to rebut the State's showing of criminal intent, the defendant must be able to show that his intoxication was of such a degree as to deprive him of the power to deliberate or to form the necessary design or guilty intent. There was substantial evidence of probative value from which the jury here could have concluded that Defendant was not intoxicated to that extent and that he knowingly or intentionally robbed Marcella Waldo and Raymond Waldo and that he knowingly or intentionally killed Raymond Waldo. No error is presented on this issue.

## VII

Defendant alleges he was denied a fair trial because the jury was allowed to separate and members returned to their homes to obtain possessions after a motion to sequester had been granted and also that the trial judge stayed at the same hotel as the jury during the proceedings. These allegations are totally unsupported by the record. There is nothing in the record to infer that either of these allegations is correct and we are thus left with only a bare statement by Defendant that such was the case. There is no error presented for us to review. *Grimes v. State*, (1983) Ind., 450 N.E.2d 512.

## VIII

Defendant alleges the trial judge failed to maintain an impartial and neutral position during the course of these proceedings. He cites only one instance, however, when he claims the trial judge abandoned his position of impartiality. Confusion arose during the cross-examination of Mrs. Waldo as to what her statement was regarding Defendant's order to her on the night of this incident, not to turn on the lights so he "might" not be recognized. The trial judge interrupted the questioning and said: "That is the list of questions asked at the, or read, the list of statements read at the voice identification, not neces-

sarily exactly what her statement was, am I correct?" Defense counsel then asked to speak to the judge at the bench and, out of the hearing of the jury, told the judge that he did not think it was proper for the judge to comment as he did in any attempt to clarify the questions. The trial judge responded to counsel by saying that he thought counsel was trying to confuse the witness. Specifically, the trial judge told counsel: "I will straighten them out every time if you confuse them."

 A trial judge has a duty not only to remain impartial but also to refrain from making unnecessary comments or remarks. *Cornett v. State*, (1983) Ind., 450 N.E.2d 498. Defendant contends that it was the duty of the State and not of the judge to protect the witness if, in fact, it appeared the witness needed protection and to object if improper conduct was demonstrated by defense counsel. This incident does not establish that Defendant was prejudiced to the extent that he failed to receive a fair trial by this remark by the trial judge who was attempting to clarify what the question before the witness was. Moreover, Defendant does not show that he was not able to completely cross-examine the witness on the subject under discussion. There is no prejudice shown to Defendant here that merits reversal.

### IX

Defendant claims the trial court erred by denying his motion for mistrial which asserted that the State's request to play a tape recording of his statement to police caused the defense to appear as though it was attempting to conceal evidence from the jury. During its cross-examination of Defendant, the State posed several questions concerning the statement he gave to Officer Reece. When Defendant commented he did not recall certain parts of the statement, the prosecutor requested him to read a transcript of the taped statement. After reviewing the transcription, Defendant continued to claim that he did not recall various parts of the statement and also stated that he was unsure about the accuracy of the tape and transcript. The prosecutor then requested that the tape recording of the interview be played to the jury. At this point the defense moved for a mistrial. The trial judge denied Defendant's motion but nonetheless admonished the jury that the defense had stipulated that the transcript of the tape which already had been admitted into evidence was accurate. Defendant again moved for mistrial claiming that the admonition was insufficient to cure the prejudice created in the minds of the jurors.

 A trial judge has great discretion in determining whether or not to grant a motion for mistrial. *Ramos v. State*, (1982) Ind., 433 N.E.2d 757, *reh. denied.* In order to show that the trial court abused its discretion in this regard, the defendant must demonstrate that he was placed into a position of grave peril to which he should not have been subjected. *Morgan v. State*, (1981) 275 Ind. 666, 419 N.E.2d 964. When the jury is admonished by the trial judge to disregard what has occurred at trial or when other reasonable curative measures are taken, no reversible error in denying a mistrial motion will normally be found. *Tinnin v. State*, (1981) 275 Ind. 203, 416 N.E.2d 116. To override the trial court's determination that an admonition was sufficient to cure any prejudice, the test is not exclusively the manner in which testimony entered the case but rather the probable impact of the irregularity on the verdict. *Davis v. State*, (1981) 275 Ind. 509, 418 N.E.2d 203. Here, the State asked that the recorded statement be played to the jury after Defendant said he did not remember parts of the statement and questioned the integrity of the tape and transcription. It was Defendant's view that this presented a situation where the jury might feel that he was attempting to conceal evidence. He makes no claim, however, that the State was deliberately attempting to give an improper or inaccurate impression of the evidence. The trial judge was in the best position to view the entire situation and to take the curative action he did in admonishing the jury. We therefore do not find that

he abused his discretion in refusing to declare a mistrial under these circumstances.

## X

During the direct examination of defense witness Mary Wagner, she was asked if she saw Defendant at the jail on a certain day and she testified that she did. She also was asked if Defendant said anything to her concerning his condition on the morning of May 17, 1980, and she said: "No." She later said, however, that she really did not recall the conversation. Defense counsel asked the trial court for leave to ask a leading question to see if he could refresh the witness' memory but the court refused to allow counsel to do so. Defendant now contends that the trial court's refusal to allow his leading question was reversible error. The decision to allow a leading question is primarily within the discretion of the trial court and circumstances must show an abuse of that discretion to constitute reversible error. *Hoskins v. State*, (1982) Ind., 441 N.E.2d 419. Here, Defendant does not show what his proposed leading question was and what evidence he sought to gain by it. He therefore does not show in what manner, if at all, he was prejudiced by the trial court's action. We have no grounds on which to review the alleged abuse of discretion by the trial court and therefore find no error on this issue.

## XI

Defendant next claims that the trial court erred by admitting into evidence State's exhibits 6, 7, and 8 which were photographs of the dead victim's body. Defendant contends the photographs were cumulative and inflammatory. We have held repeatedly that although photographs of a deceased victim are gruesome by their very nature, they are properly admitted into evidence if for the purpose of showing the nature and extent of the wounds and to prove the cause of death. They are relevant on this issue even though the cause of death has been proved through testimony of other State's witnesses. Admissibility also involves the photograph's relevance which may be ascertained by determining whether a witness would be permitted to verbally describe the objects photographed. *Grimes, supra; Webster v. State*, (1981) Ind., 426 N.E.2d 1295. The trial court's decision to admit photographs into evidence will be reversed only upon the showing of an abuse of discretion. *Loy v. State*, (1982) Ind., 436 N.E.2d 1125. The instant trial court did not abuse its discretion by admitting these exhibits into evidence since they were relevant to prove the cause of death. We find no error.

## XII

Defendant further argues that the trial court erred by admitting into evidence certain exhibits which were cumulative of other evidence already presented. The contested exhibits were photographs of the crime scene, of a gun, and of latex casting material used to make footprint impressions. Photographs of a crime scene will be admitted into evidence, even though they tend to be repetitive and cumulative, so long as they are competent and relevant aids to the jury in understanding the testimonial evidence. *Lloyd v. State*, (1983) Ind., 448 N.E.2d 1062, *reh. denied*. Defendant alleges that the gun and latex cast already had been placed into evidence and therefore the admissions of the photographs of the gun and of the casting material improperly emphasized the State's theory of the case. Relevant evidence will not be rejected simply because it is cumulative although it should be excluded if its potential to prejudice the jury improperly outweighs its probative value. The admission or rejection of cumulative evidence lies within the sound discretion of the trial court and its ruling will not constitute reversible error unless abuse of discretion is clearly shown. *Hyde v. State*, (1983) Ind., 451 N.E.2d 648. Although these exhibits were somewhat repetitive and cumulative, they were not of such a prejudicial nature that their probative value was outweighed. We do not find that the trial judge abused

his discretion by admitting these exhibits into evidence.

## XIII

 Defendant also objects to the testimony of Officer Jerry Golden concerning the procedure used by police in homicide investigations. Golden's testimony was presented to inform the jury about various investigatory procedures so that it could more fully comprehend other testimony from police officers. Defendant has not shown that he was prejudiced by Golden's testimony and any prejudice there might have been was outweighed by its probative value in aiding the jury in their resolution of the facts. We find no abuse of discretion in the trial court's decision to admit this testimony.

 Defendant contends that the trial court erred by permitting Officer Richard Lopez to testify concerning a radio broadcast which alerted police to watch for a green Ford LTD. Defendant also complains about Officer Springer's testimony that Officer Leist transmitted the license plate number of the vehicle which Defendant was driving to the Muncie Police Department for vehicle identification and received a radio message in response informing that the license was registered to Mr. Waldo. Defendant contends these statements by the officers were hearsay and should not have been admitted into evidence. Hearsay evidence is in-court testimony about an extra-judicial statement offered to prove the truth of the matters asserted therein. Such evidence is objectionable when the value of the testimony rests on the credibility of the declarant and the declarant is not in court or otherwise available for cross-examination. *Grimes, supra.* We agree, however, with the State that the radio transmissions testified to here by these two police officers were not put into evidence to prove the truth of their assertions but were put in to evidence to prove the truth of their assertions but were put in to explain what actions the police officers took and their reasons for doing so. The officers testified about the trans-

missions to give continuity to their testimony and to explain their observations and the actions they took following them. As such, the testimony was proper and the trial court did not err in permitting it.

## XIV

 Defendant alleges the trial court erred by admitting into evidence certain testimony of Marcella Waldo. One of his objections is directed to Mrs. Waldo's testimony giving some background information about her deceased husband including where he worked and his work on their house in Shideler. Defendant objected to this testimony claiming it was irrelevant. A general objection claiming testimony is irrelevant presents no issue on appeal unless further explanation is given as to the prejudicial effect of such testimony. *O'Conner v. State*, (1980) 272 Ind. 460, 399 N.E.2d 364. The prosecutor's response to Defendant's objection was that the State had to prove that a living human being was killed and Mrs. Waldo's testimony was to do this. In view of the fact that the questions and answers generally referred to background activity of Mr. Waldo during his life and had little if any prejudicial effect on Defendant, we do not find that the trial court abused its discretion in permitting it.

 Defendant also objects to questions asked of Mrs. Waldo by the State regarding her encounter with Defendant during the commission of these crimes. She was asked: "How did you know the gun was at your neck." She started to testify: "I could feel it, you know, he didn't ... if I didn't answer right away I would get ...," but her answer was interrupted by Defendant's counsel who stated: "Your Honor, this is not timely, but I would ask that the last statement be stricken from the record on the grounds of hearsay." The trial court responded: "You are right, it is not timely. Overruled." It is generally held that the failure to raise a timely objection constitutes a waiver of the issue on appeal. *Vacendak v. State*, (1982) Ind., 431 N.E.2d 100. An exception to this waiv-

er rule is made when the objectionable answer could not have been anticipated. In the circumstance before us, we believe that an unfavorable response could have been foreseen. Furthermore, it appears on the record that Defendant did not request any further corrective measures. He did not follow up the trial court's ruling by asking that the question and answer be stricken or that the jury be instructed to disregard the answer. Defendant therefore waived any error.

▪ Defendant further objects to Mrs. Waldo's testimony on direct examination in regard to questions Defendant asked her during the robbery and murder and the answers she gave him. The questioning was as follows:

"Q. What other, what did you reply to these questions?

A. I answered every question he asked, I was asked.

Q. And what else were you asked?"

Defendant then objected that this testimony would be hearsay but the trial court overruled the objection and permitted the testimony. At Defendant's request, however, the trial judge instructed the jury that the questions and answers were not given as an offer to prove the truth of the matters asserted therein, but were only to show that the questions were asked and the answers were given. The State maintains it merely offered this evidence to show that Defendant questioned Mrs. Waldo during the perpetration of the crimes. The trial court properly permitted the questions and answers because questions asked by the defendant during the perpetration of the crime and answers made to him are exceptions to the hearsay rule and are properly admitted into evidence.

### XV

▪ Defendant next contends that the trial court erroneously admitted into evidence State's Exhibit 1, a neutron activation test kit, and State's Exhibit 56, a pair of Defendant's shoes, because there was not a sufficient chain of custody proved. The purpose of requiring proof of

a continuous chain of custody from seizure to admission at trial is to lay a proper foundation connecting the evidence with the accused and to negate any substantial likelihood of tampering, loss, substitution or mistake. *Arnold v. State,* (1982) Ind., 436 N.E.2d 288. Although a continuous chain of custody must be shown, the State is not required to exclude every remote possibility of tampering but must only provide reasonable assurance that the exhibit has passed through various hands in an undisturbed condition. *Borom v. State,* (1984) Ind., 470 N.E.2d 712; *Stewart v. State,* (1982) Ind., 442 N.E.2d 1026. When an investigator places his initials upon a piece of fungible evidence such as a handgun and later testifies at trial that by reason of his recognition of the initials he can swear that the item in court is the same one which he examined, the identification predicate for admission is established. *Babbs v. State,* (1983) Ind., 451 N.E.2d 655. In the present case, witnesses for the State testified that they initialed and put various markings on the test kit and on the shoes which made them readily identifiable to them. They further testified that they observed these same initials and markings when examining the exhibits at trial and, by their general observation of the items, were able to state that these were the same items that passed through the hands of the various police officers. Defendant does not allege in any manner that he can demonstrate any change of condition of the test kit or of the shoes from the time they were seized until the time they were offered at trial. Accordingly, we find that the State presented sufficient evidence to establish a chain of custody for both the test kit and the shoes and we find that these exhibits were properly admitted into evidence by the trial judge.

### XVI

▪ William Kincaid of the U.S. Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, testified about the results of Defendant's neutron activation test which indicated that the powder

residue found on Defendant's hands following his arrest indicated that he had recently fired a firearm. The trial court admitted into evidence State's Exhibits 2 and 3 which were photographs demonstrating the manner in which barium and antimony residues which may be deposited on an individual when a gun is fired are contained in smoke that is expelled when a bullet is fired in a gun. Defendant now contends that the photographs were irrelevant and not probative of any issue of the case. A trial court has wide discretion in ruling on the relevancy of evidence. Evidence is relevant if it has a logical tendency to prove a material fact. *White v. State*, (1981) Ind., 425 N.E.2d 95. Testimony regarding the results of the neutron activation test was of a technical nature not generally known or understood by the average citizen who might be serving on a jury in a particular case. The two photographs in question were admitted into evidence as an aid to the jury in understanding the concept of gun residue so that they might further understand how the test was administered and the results were determined. Pictures or diagrams are admissible to represent objects or concepts which cannot otherwise be so clearly shown or described as when such documents are offered in connection with the testimony of a witness. It is discretionary with the trial judge to admit such exhibits as legitimate aids to the trial court or jury. *Brown, supra*. It clearly appears that the photographs were of such a nature here and the trial court properly permitted them to be admitted into evidence.

## XVII

Defendant claims the trial court committed reversible error by overruling Defendant's objections to certain allegedly leading questions posed by the prosecutor to State's witness Renee Hopper. The record shows that Defendant did object to a question he considered leading when the witness was asked about the number and location of houses on one street and the trial court agreed and cautioned the prosecutor that he was leading. Defendant objects, however, to two other questions asked of the same witness which he claims were leading and in which the trial court overruled his objections. It appears that the questions asked and answered were preliminary in their character. Allowing a leading question is primarily within the discretion of the trial court. On appeal, an abuse of discretion must be demonstrated to constitute reversible error and a defendant must show a substantial injury by the answer to the leading question. *See Hoskins, supra*. The questions here simply asked the witness to state in her own words what she observed and did not prejudice Defendant in any material way. The trial court therefore did not abuse its discretion by permitting the questions and answers.

## XVIII

Defendant next claims that the trial court erred by permitting Officer Richard Lopez to answer a question posed to him by the State during its re-direct examination of him. The questioning was as follows:

"Q. Would you tell the members of the jury why everyone else was out on the road?

A. Referring to the homicide team....

Q. Why all the other officers were out on the road?

A. Oh...

[objection made and overruled]

A. Okay, we preserved the scene intact, kept people out of the area to preserve any evidence that was there."

Defendant objects to the trial court permitting Officer Lopez to answer this question since the question required the response to be an opinion. In the first instance, the determination of whether a witness is qualified to give an opinion is within the trial court's discretion. The extent of a witness' knowledge affects the weight of his testimony and not its admissibility. *Rowan v. State*, (1982) Ind., 431 N.E.2d 805, *reh. denied*. The response of Officer Lopez here indicated this was more than just his

opinion. He was part of the police investigation team and he was testifying about the activities of all of the officers on the scene with regard to the methods they used in the investigation and the efforts they were making to preserve any evidence that was there. In his position the officer was qualified to offer his observations as to the duties of the various investigators present. Furthermore, Defendant has failed to demonstrate that he was prejudiced in any manner by the question and answer given by Officer Lopez. There is no error presented on this issue.

## XIX

Defendant tendered into evidence Exhibits D, E, F, and G, which were photographs of the body of the decedent and which were given to Defendant by the State. The only purpose of offering said photographs was stated by the defendant to be that they should be admitted to support his contention that the photographs given to the defense by the State were less clear than the photographs introduced at trial by the State. The State objected that the photographs were not offered to prove a material fact and did not shed light on Defendant's guilt or innocence. The trial court refused the offered exhibits. The trial court is accorded wide latitude in ruling on the relevancy of evidence. Evidence is relevant if it makes the desired inference more probable and is material to an issue in the case. *Armstrong v. State*, (1982) Ind., 429 N.E.2d 647. Since the photographs were not offered to prove a material fact in the case and did not shed light on Defendant's guilt or innocence, the trial court properly refused them.

## XX

Defendant now claims the trial court erred by sustaining the State's objections to certain testimony from Officers Richard Reece and Jeffrey Leist. During the cross-examination of Officer Reece, Defendant attempted to have Reece testify about his theory of the case. After the trial court sustained an objection, the defense made an offer to prove to the effect that the

reason Defendant killed Mr. Waldo was that at the time he confronted Mr. Waldo, the resentment and hostility he felt toward his father, who abandoned him, flashed through his mind. The trial court found that the testimony was inadmissible since it would allow a witness to speculate about Defendant's psychiatric condition when the witness was not qualified to do so. The trial court expressed its feeling that this would be particularly true when there was no insanity plea in the cause and when the two psychiatrists who examined Defendant before he withdrew his insanity plea found him to be sane. The second incident involved the cross-examination testimony of Officer Leist regarding when the officers activated the flashing red light on their car and pulled up behind the stopped vehicle driven by Defendant. The testimony was that Defendant exited the vehicle and started to walk away. Leist was then asked if he was of the opinion that Defendant noticed the police car and knew that the officers were attempting to stop him. The State again objected claiming that this would be an opinion as to the state of Defendant's mind which the officer was not qualified to give. The trial court sustained the objection.

The general rule is that witnesses are confined to testifying to specific statements of fact but opinion testimony in certain situations is allowed as an exception to the rule. *Reburn v. State*, (1981) Ind., 421 N.E.2d 604, *reh. denied.* Whether a witness is qualified to give an opinion is within the trial court's discretion. *Rowan, supra.* The trial court properly found that Officer Reece was not qualified to offer his opinion based on his speculation about Defendant's thought processes when he shot and killed Waldo. The same can be said of Officer Leist with reference to his qualification to offer an opinion about Defendant's knowledge and actions prior to his arrest. The officers could testify about what they observed and in the use of their senses. Conclusions reached as to the thought processes of the defendant or as to the psychiatric or psychological attitudes

that prompted him to commit criminal acts are properly to be determined by the jurors as inferences from the facts presented to them. The trial court properly excluded such testimony.

## XXI

■ Defendant claims the trial court erred by admitting into evidence State's Exhibit 45, the decedent's hat, State's Exhibit 46, the decedent's camera, and State's Exhibit 47, a photograph of the decedent's car. The hat and camera were identified by Trooper Lawrence Pritchard as items of evidence recovered from the decedent's vehicle which Defendant had been driving at the time of his arrest. The foundation was laid to establish that the hat and camera were items stolen during the commission of the offense and were later found in Defendant's possession when he was arrested. The items therefore had relevance to the issues of the case and were properly admitted. *Johnson v. State*, (1983) Ind., 447 N.E.2d 1072; *Armstrong, supra*. In addition, Defendant failed to offer any objection to the admission of State's Exhibit 47, the photograph of decedent's car, when it was offered and he therefore failed to preserve this issue for review. *Remsen v. State*, (1981) Ind., 428 N.E.2d 241.

## XXII

■ It is Defendant's claim the trial court erred by refusing certain testimony of Dr. Roger Manges and John Moore. The testimony concerned the effect a .2% level of alcohol in the blood would have on the judgment of a person and whether said judgment would be impaired by that level of alcohol content. John Moore was asked to give the definition of "repression" and "compulsion" in relation to an alcoholic. The trial court generally sustained objections to this type of testimony, claiming that it was insanity testimony and there was no defense of insanity in the cause since it had been withdrawn by the defendant. Defendant claimed this expert testimony was to be directed to determining his intent when he committed the instant

crimes. The trial court found that the testimony proposed by John Moore was psychiatric testimony that he was not qualified to give and furthermore was irrelevant since insanity was not at issue in the cause. Since there was no insanity plea at issue, the trial court properly refused this testimony.

## XXIII

■ Defendant also claims that the trial court erred by denying his petition to be let to bail. Since this issue is now moot, nothing is presented for consideration on appeal. *Partlow v. State*, (1983) Ind., 453 N.E.2d 259, *cert. denied* (1984) —— U.S. ——, 104 S.Ct. 983, 79 L.Ed.2d 219.

## XXIV

■ Defendant next claims that the trial court erred by overruling his objections to and his motion to strike the presentence investigation report since the presentence report should have been prepared by the Delaware County Probation Department rather than by the Grant County Probation Department. The record shows here that the trial court permitted the Delaware County Probation Department to assist in the preparation of the report. The State correctly points out that the statutes pertaining to pre-sentence reports do not indicate that the report must be prepared by the probation department of the county where the offense occurred. Moreover, Defendant does not point out how he was prejudiced by the fact that the report was prepared by Grant County rather than Delaware County and he has not cited authority to support his assertion that Delaware County was the proper county to prepare the report. Defendant further argues that the police report concerning the instant offenses should not have been included in the pre-sentence report. Contrary to his contentions, Ind.Code § 35-4.1-4-10(a) [Ind. Code § 35-50-1A-10(a) (Burns 1979)] provides that the pre-sentence report shall include "information with respect to the circumstances attending the commission of the offense." Furthermore, the probation

officer and the trial court have wide discretion regarding the contents of a pre-sentence report. *Smith v. State*, (1982) Ind., 432 N.E.2d 1363. Defendant also contends he did not receive a copy of the pre-sentence report in sufficient time to prepare a response. The record discloses that Defendant received the pre-sentence report on Thursday, November 19, 1981. The sentencing hearing commenced on Monday, November 23, 1981. This appears to be a reasonable and adequate time for Defendant to review the report and to prepare a response. Defendant has shown no reversible error regarding the trial court's rulings involving the pre-sentence report.

### XXV

Finally, Defendant contends that the trial court erred by considering an improper aggravating circumstance, by imposing a manifestly unreasonable sentence, by failing to find certain mitigating circumstances and by sentencing him to consecutive terms for murder and burglary. When a trial judge increases or decreases a basic sentence, suspends a sentence, or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the trial judge to be mitigating or aggravating circumstances. *Spinks v. State*, (1982) Ind., 437 N.E.2d 963; *Page v. State*, (1981) Ind., 424 N.E.2d 1021, *on remand* (1982) Ind., 442 N.E.2d 977, *reh. denied* (1983). We review a sentence that is within the statutory limits to determine whether the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R. App.Rev.Sen. 2(1).

The trial judge in the instant case found as aggravating circumstances Defendant's prior criminal convictions, the seriousness of his crimes and the ages of his victims. Defendant claims the trial court erred by failing to consider mitigating circumstances such as his alcoholism and his alleged intoxication at the time of the incident which he claims should warrant a reduction in his sentence. Although a trial judge can use mitigating factors to determine an ultimate sentence, mitigating factors are not a mandatory consideration in sentencing a criminal defendant. *Johnson, supra; Kocher v. State*, (1982) Ind., 439 N.E.2d 1344.

Defendant further claims that the trial court erred by sentencing him to consecutive terms for murder and burglary since the murder was a lesser included offense of the burglary. There is no merit to this contention. The burglary of the Waldo residence and the murder of Raymond Waldo were separate offenses, each requiring proof of facts which the other did not. It was proper therefore to give separate sentences for each crime and to provide that the sentences be served consecutively.

The record shows here that Defendant broke into the home of the victims, an elderly couple, shot and killed Raymond Waldo who was in his bed and unarmed at the time, and then continued to commit robbery and burglary on the premises. We do not find that the sentence imposed by the trial court was manifestly unreasonable considering the nature of the crime and the character of the perpetrator.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.